## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JOHN DAVIS,<br><br>              Plaintiff,<br><br>   v.<br><br>MARY CAROLE COONEY, in her official capacity as Chairperson of the Fulton County Board of Registration and Elections; DAVID J. BURGE, in his official capacity as Vice-Chair of the Fulton County Board of Registration and Elections; LUTHER W. BECK, RUKIYA S. THOMAS, and STAN MATARAZZO, in their official capacities as Members of the Fulton County Board of Registration and Elections; and RICHARD BARRON, in his official capacity as Chief Administrative Officer to the Fulton County Board of Registration and Elections,<br><br>              Defendants. | Civil Action File No: |

## VERIFIED COMPLAINT FOR DECLARATORY
## AND INJUNCTIVE RELIEF

Plaintiff asks the Court to declare Georgia House Bill 514 ("HB 514") unconstitutional and invalid and to enjoin the November 2016 referendum on the incorporation of the proposed City of South Fulton (the "City of South Fulton Referendum" or "Referendum") because, *inter alia*, absent such a declaration and

injunction (1) House Bill 514 expressly allows certain persons who **will not** (and certain other persons who may not) ultimately reside in the proposed City of South Fulton to vote in the Referendum, thereby diluting and debasing Plaintiff's and similarly situated voters' votes; and (2) Plaintiff and similarly situated voters will be forced to vote on incorporation of a city without knowing the territorial makeup and tax base of the potential city or whether the new city will include certain portions of Fulton County that are the subject of a pending dispute over annexation into the City of Atlanta.

## THE PARTIES

### Plaintiff

1.     Plaintiff John Davis is a registered voter who resides in a portion of unincorporated Fulton County, Georgia that will be impacted by the City of South Fulton Referendum. Mr. Davis does not reside in the Fulton County Industrial District. Mr. Davis intends to vote in the City of South Fulton Referendum.

### Defendants

2.     The following six Defendants are sued in their official capacities as members or officers of the Fulton County Board of Registration and Elections (the "BRE"):

a.     Mary Carole Cooney, who is sued in her official capacity as a member and the Chairperson of the BRE, in which capacity she is charged by O.C.G.A. § 21-2-40, 1989 Ga. Laws 4577, 4578, §1, and HB 514 with the power and duty of conducting the City of South Fulton Referendum in November of this year;

b.     David J. Burge, who is sued in his official capacity as a member and the Vice-Chair of the BRE, in which capacity he is charged by O.C.G.A. § 21-2-40, 1989 Ga. Laws 4577, 4578, §1, and HB 514 with the power and duty of conducting the City of South Fulton referendum in November of this year;

c.     Luther W. Beck, who is sued in his official capacity as a member of the BRE, in which capacity he is charged by O.C.G.A. § 21-2-40, 1989 Ga. Laws 4577, 4578, §1, and HB 514 with the power and duty of conducting the City of South Fulton Referendum in November of this year;

d.     Rukiya S. Thomas, who is sued in her official capacity as a member of the BRE, in which capacity she is charged by O.C.G.A. § 21-2-40, 1989 Ga. Laws 4577, 4578, §1, and HB 514 with the power and duty of conducting the City of South Fulton Referendum in November of this year; and

e.     Stan Matarazzo, who is sued in his official capacity as a member of the BRE, in which capacity he is charged by O.C.G.A. § 21-2-40, 1989 Ga. Laws

4577, 4578, §1, and HB 514 with the power and duty of conducting the City of South Fulton Referendum in November of this year.

f.      Richard Barron, who is sued in his official capacity as Chief Administrative Officer to the BRE, in which capacity he is charged by O.C.G.A. § 21-2-40, 1989 Ga. Laws 4577, 4581, §11, and HB 514 with the power and duty of conducting the City of South Fulton Referendum in November of this year.

## JURISDICTION AND VENUE

3.      This Court has original subject matter jurisdiction over this action, under 28 U.S.C. § 1331, because it arises under the equal protection and substantive due process clauses of the Fourteenth Amendment of the United States Constitution and under 42 U.S.C. § 1983. The Court has jurisdiction to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

4.      Venue in this District is proper, under 28 U.S.C. § 1391(b), because all of the Defendants reside in this District, and the events giving rise to the claims arose in this District.

## FACTS COMMON TO ALL COUNTS

### The 1979 Local Constitutional Amendment Creating—and Prohibiting the Annexation or Incorporation of—the Fulton County Industrial District

5.      In 1979, Georgia's General Assembly and Fulton County voters passed a Local Constitutional Amendment (the "1979 LCA") establishing the Fulton

County Industrial District (the "FID"), an industrial territory located within Fulton County, Georgia, which currently generates significant property tax receipts for Fulton County. 1979 Ga. Laws 1797.

6.      The 1979 LCA prohibits the annexation or incorporation of any part of the FID. 1979 Ga. Laws 1797, 1798-99.

7.      On March 18, 2015, the City of Atlanta—which seeks to annex certain portions of the FID—sued Fulton County, Georgia, for, among other things, a declaratory judgment that the 1979 LCA is invalid and void. *See City of Atlanta v. Fulton Cnty.*, 2015-CV-258507 (Super. Ct. Fulton Cnty. Aug. 31, 2015) (the "FID Litigation").

8.      On August 31, 2015, the Superior Court of Fulton County entered an order in the FID Litigation declaring the 1979 LCA void. *Id.*

9.      On September 24, 2015, Fulton County appealed the August 31, 2015 Order to the Supreme Court of Georgia. *See Fulton Cnty. v. City of Atlanta*, S16A0689 (Ga. 2016) (the "FID Litigation Appeal").

10.     On October 3, 2016, the Supreme Court of Georgia entered an order reversing the Superior Court's order invalidating the 1979 LCA. *Fulton Cnty. v. City of Atlanta*, S16A0689, 2016 WL 5758991, at *1 (Ga. Oct. 3, 2016).

11.    Accordingly, the 1979 LCA has not been invalidated and **the FID cannot be annexed or incorporated but must remain part of unincorporated Fulton County.**

**House Bill 514 and the Potential City of South Fulton**

12.    Meanwhile, in March 2016, the month before the Supreme Court of Georgia heard oral argument in the FID Litigation Appeal, Georgia's General Assembly passed HB 514. H.B. 514, 153d Gen. Assemb., Reg. Sess. (Ga. 2016) (copy attached as **Exhibit 1**).

13.     Governor Nathan Deal signed HB 514 into law on April 26, 2016.

14.    HB 514 authorizes a November 2016 referendum for residents of unincorporated Fulton County to vote on the creation of a new "City of South Fulton."

15.    HB 514 directs:

> The election superintendent of Fulton County shall call a special election for the purpose of submitting this Act to the qualified voters of the proposed City of South Fulton, as provided in Section 7.13 of this charter, for approval or rejection. The superintendent shall set the date of such election for the Tuesday next following the first Monday in November, 2016. The superintendent shall issue the call for such election at least 30 days prior to the date thereof.

H.B. 514, § 7.14.

16.    HB 514 states that "[i]t shall be the duty of the superintendent to hold and conduct such election" and that "[i]t shall be his or her further duty to certify the result thereof to the Secretary of State." *Id*.

17.    Qualified electors for purposes of the Referendum include "those qualified electors of Fulton County residing within the corporate limits of the City of South Fulton as described in Section 1.11 [of HB 514]." H.B. 514, § 7.13.

18.    HB 514 further states that, should it pass the referendum, the corporate limits of the City of South Fulton:

> [S]hall include all unincorporated areas of Fulton County, including the Fulton County Industrial District, as such exist on July 1, 2016; provided, **however, that if the local constitutional amendment establishing the Fulton County Industrial District is not repealed or determined judicially to be of no force and effect prior to the first municipal election being conducted [currently slated for March 2017], the Fulton County Industrial District shall not become a part of the City of South Fulton.**

H.B. 514, § 1.11 (emphasis added).

19.    The October 3, 2016 opinion in the FID Litigation Appeal ensures with certainty that the FID **will not and cannot become a part of the City of South Fulton.**

20.    Yet, even though the Georgia Constitution prohibits the FID from becoming a part of the City of South Fulton, residents of the FID are considered "qualified electors" and will be able to vote in the Referendum, thereby diluting and debasing the votes of Plaintiff and every other voter who **will** be in the new city if the Referendum passes.

21.     HB 514 also authorizes the city council of the new city to assess, levy, and collect taxes and fees and establish a millage rate for the city property tax. *See, e.g.*, H.B. 514, §§ 1.12, 6.10, 6.11, 6.12, 6.15, 6.17.

22.    However, neither the ballot language authorized by HB 514, nor the full text of HB 514, informs voters that the new city will not include the FID, which, if included, would be a significant source of tax revenue for the new city.

### Disputed Cascade Area Annexations

23.    To complicate matters further, following the passage of HB 514, certain resident electors and property owners in the Cascade-area neighborhood of unincorporated Fulton County petitioned for annexation into the City of Atlanta

under the 60% method of annexation afforded by Title 36, Chapter 36 of the Georgia Code (the "Cascade Area Annexations").

24.    The Atlanta City Council approved the Cascade Area Annexations ordinances on June 20, 2016 and June 28, 2016.

25.    Mayor Kasim Reed signed the annexation ordinances on June 21, 2016 and June 28, 2016, and the petitioned areas (the "Cascade Annexation Area") were annexed into the City of Atlanta.

26.    On July 19, 2016, a group of plaintiffs sued the City of Atlanta, challenging the Cascade Area Annexations. *See Mays et al. v. City of Atlanta*, 2016CV77840 (Super. Ct. Fulton Cnty. Sept. 8, 2016) (the "Cascade Annexation Litigation").

27.    On September 8, 2016, the Fulton County Superior Court held that the Cascade Area Annexations were invalid. *Id.*

28.    The City of Atlanta has appealed the decision. *See Mays et al. v. City of* Atlanta, S17M0239 (Ga. 2016) (the "Cascade Annexation Appeal").

29.    On September 20, 2016, the Supreme Court of Georgia entered an order denying a motion to expedite the Cascade Annexation Appeal and holding that, "insofar as the notice of appeal serves as supersedeas of [the final Superior Court Order], the supersedeas is lifted instanter." *Id.* (Ga. Sept. 20, 2016).

30.    Accordingly, residents of the Cascade Annexation Area remain residents of unincorporated Fulton County *for the time being* and for the purposes of the November 2016 election.

31.    However, depending on the eventual outcome of the Cascade Annexation Appeal, it is unknowable whether residents of the Cascade Annexation Area ultimately will remain residents of unincorporated Fulton County or whether they will be residents of the City of Atlanta.

32.    Just as the ballot language and text of HB 514 fail to inform voters that the new city will not include the tax-rich FID, the ballot language and text of HB 514 also fail to inform voters that the new city may or may not include the Cascade Annexation Area depending on the Supreme Court of Georgia's decision in the Cascade Annexation Appeal.

### The November 2016 Election

33.    In the November 2016 general election and special election, absent an injunction, Defendants will conduct the City of South Fulton Referendum. *See* H.B. 514, §7.14.

34.    Absentee ballots for the November 2016 election could have been mailed out as early as September 20, 2016. O.C.G.A. § 21-2-384(a); *see also 2016 Elections and Voter Registration Calendar*, http:/sos.ga.gov/index.php/elections/

2016_election_dates (last visited Sept. 16, 2016) ("*2016 Elections and Voter Registration Calendar*").

35.     The last day a person may register and be eligible to vote in the November election is October 11, 2016. O.C.G.A. § 21-2-224(a); *2016 Elections and Voter Registration Calendar.*

36.     Advanced (in-person) voting for the November election begins on October 17, 2016. O.C.G.A. § 21-2-385(d)(1); *2016 Elections and Voter Registration Calendar.*

37.     Mandatory Saturday voting for the November election will be held on October 29, 2016. O.C.G.A. § 21-2-385(d)(1); *2016 Elections and Voter Registration Calendar.*

**HB 514 and the City of South Fulton Referendum Will Deprive Plaintiff of His Right to Vote and to Have His Vote Counted Equally, and HB 514 and the Referendum Ballot Fail to Adequately Inform Voters about the Topic on Which They are Voting**

38.     Plaintiff's vote, and the votes of other unincorporated Fulton County voters who do not reside in the FID or the Cascade Annexation Area, will be diluted and debased by votes cast by residents of the FID and may be diluted and debased by votes cast by residents of the Cascade Annexation Area.

39.     If the City of South Fulton Referendum goes forward, registered voters who reside in unincorporated Fulton County—including residents who live in the

FID and in the Cascade Annexation Area—may vote on whether to incorporate the City of South Fulton.

40.    Since the Supreme Court of Georgia issued an opinion on October 3, 2016 reversing the Superior Court's order invalidating the 1979 LCA in the FID Litigation Appeal, the 1979 LCA currently has not been invalidated and the FID cannot be annexed.

41.    Yet, HB 514 allows residents of the FID to vote on cityhood *even though those voters will remain residents of unincorporated Fulton County and will not become residents of the City of South Fulton.*

42.    Allowing residents who live in the FID to vote in the City of South Fulton Referendum, even though the election results will not impact them, guarantees that FID voters will serve only to dilute the votes of Plaintiff and other unincorporated Fulton County residents who do not reside within the FID.

43.    Additionally, since the Supreme Court of Georgia has yet to issue an opinion in the Cascade Annexation Appeal, and is virtually certain not to issue an opinion until sometime in 2017, the validity of the Cascade Area Annexations will not be determined until after the City of South Fulton Referendum takes place.

44.    Yet, HB 514 allows residents of the Cascade Area Annexations to vote on cityhood.

45.     If, after the City of South Fulton Referendum takes place, the Supreme Court of Georgia reverses the Fulton County Superior Court Order invalidating the Cascade Area Annexations, then voters who reside within the Cascade Annexations Area will have voted on cityhood even though those voters, like those who reside within the FID, *will not become residents of the City of South Fulton and will instead be residents of the City of Atlanta.*

46.     Allowing residents who live in the Cascade Annexation Area to vote in the City of South Fulton Referendum, even though the election results may not impact them, poses a substantial danger of Cascade Annexation Area voters diluting the votes of Plaintiff and other unincorporated Fulton County residents who do not reside within the Cascade Annexation Area.

47.     Equally problematic is the fact that the ballot language for the City of South Fulton Referendum fails to adequately inform voters about the topic on which they are voting.

48.     The ballot language provides only:

( ) YES   Shall the Act incorporating the City of South Fulton in Fulton County and

( ) NO    granting the homestead exemptions described therein be approved?

49.     The ballot language fails to notify voters that the FID will not be included in the new city and that inclusion of the Cascade Annexation Area in the

City of South Fulton is uncertain and contingent on a decision the Supreme Court of Georgia will make *after* the November election. (And even before the October 3, 2016 Supreme Court of Georgia opinion in the FID Litigation Appeal, the ballot language failed to inform voters of even the contingent possibility that the new city might not include the FID.)

50.    The ballot language certainly does not apprise voters that, if the new city does not include the FID and the Cascade Annexation Area, the city will not include a significant source of tax revenue and the residents of the new city will likely face higher taxes than if the FID were included in the new city.

51.    Even if voters review the full text of HB 514, it *still* is impossible for voters to know the boundaries and tax base of the proposed city at the time they are asked to vote on cityhood, because the boundaries will not and cannot be determined until the Supreme Court of Georgia renders its decision in the Cascade Annexation Appeal.

52.    Further, the language in HB 514 concerning the proposed new city's power to tax is indefinite, incomplete, and ambiguous: although HB 514 authorizes the future city council of the new city to assess, levy, and collect taxes and fees and establish a millage rate for the city property tax, the territory and, thus, the tax base of the new city were highly contingent on the Supreme Court of Georgia's decision

in the FID Litigation Appeal and remain contingent on the Supreme Court of Georgia's decision in the Cascade Annexation Appeal.

53.     Without knowing that the new city will not include the FID, voters have no way of knowing that the new city will not include a significant source of tax revenue.

54.     The Cascade Annexation Area is yet another source of tax revenue that may not be included in the new city, but voters are not alerted to that possibility.

55.     The amount residents of the proposed city will pay in taxes and millage rates depended heavily on whether the new city would include the FID and also will depend on whether the new city will include the Cascade Annexation Area.

56.     Now that the new city will not include the FID, city taxes will be immensely higher, and taxes will increase even more if, after the Referendum, the Supreme Court of Georgia issues an opinion that places the Cascade Annexation Area outside of the reach of the new city of South Fulton.

## Postponing the City of South Fulton Referendum is Necessary and Expressly Provided for in HB 514

57.     Plaintiff is aware of no other recent municipal incorporation or annexation in Georgia where certain residents' votes were guaranteed, by the very referendum-authorizing act, to be diluted and debased by the votes of individuals who cannot possibly become residents of the new city.

58.     Plaintiff is aware of no other recent municipal incorporation or annexation in Georgia where voters were required to vote on the incorporation of a new city even though the very boundaries of the city depended on a contingency that would not be determined until after the election.

59.     Postponing the Referendum until such time as the Georgia General Assembly enacts a valid referendum-authorizing bill or, at minimum, until sometime after the Supreme Court of Georgia issues its final decision in the Cascade Annexation Appeal, is necessary to protect Plaintiff's and other similarly situated voters' rights to equal protection and substantive due process of law.

60.     Moreover (and perhaps because the General Assembly anticipated the type of constitutional quandary that is now upon us), **HB 514 expressly provides for postponing the City of South Fulton Referendum:**

> It is the intention of the General Assembly that this Act be construed as directory rather than mandatory with respect to any date prescribed in this Act. **If it is necessary to delay any action called for in this Act for providential cause or any other reason**, it is the intention of the General Assembly that the action be delayed rather than abandoned . . . . (1) **If it is not possible to hold the referendum election . . . on the date specified . . . then**

> **such referendum shall be held as soon thereafter as is reasonably practicable** . . . .

H.B. 514, § 7.17 (emphasis added).

61.    Given the absolute certainty that Plaintiff's and other voters' votes **will be** diluted and debased by FID voters, given the looming and problematic uncertainty surrounding the Cascade Annexation Area, and given the Bill's own express provision for postponing the City of South Fulton Referendum, the Court should, at the very least, enjoin the Referendum until the state of the Cascade Area Annexations is settled.

62.    Any harm caused by postponing the City of South Fulton Referendum is far outweighed by the harm Plaintiff and similarly situated voters will suffer should the referendum go forward in November.

## COUNT 1: VIOLATION OF EQUAL PROTECTION OF THE LAW

63.    Plaintiff incorporates by reference all of the allegations set forth above as if fully set forth herein.

64.    HB 514 is unconstitutional, null, and void because it violates Plaintiff's and other similarly situated voters' rights to equal protection of the law afforded by the United States Constitution.

65.     The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, §1.

66.     Under the "one person, one vote" principle, the Equal Protection Clause protects each qualified voter's right to vote in an election and to have his or her vote counted equally. *See generally Reynolds v. Sims*, 377 U.S. 533, 554, 558 (1964); *see also Crumly v. Cobb Cnty. Bd. of Elections & Voter Registration*, 892 F. Supp. 2d 1333, 1342 (N.D. Ga. 2012). "The right to have one's vote counted is as open to protection . . . as the right to put a ballot in a box [and the] right to vote can neither be denied outright . . . nor diluted by ballot-box stuffing." *Reynolds*, 377 U.S. at 554.

67.     "States are required to insure that each person's vote counts as much, insofar as it is as practicable, as any other person's . . . the right to vote in an election is protected by the United States Constitution against dilution or debasement." *Hadley v. Junior Coll. Dist. of Metro. Kan. City, Mo*., 397 U.S. 50, 54 (1970).

68.     The City of South Fulton Referendum will deprive Plaintiff, and other voters who live outside the FID, of the right to equal protection of the law, because FID residents' votes **will** dilute and debase non-FID residents' votes, even though the City of South Fulton Referendum will not impact FID residents.

69.     Plaintiff's vote also may be diluted and debased by voters who live within the Cascade Annexation Area since, like residents of the FID, the Cascade Annexation Area residents will be allowed to vote in the City of South Fulton Referendum even though they later may be deemed residents of the City of Atlanta.

70.     In other words, if Cascade Annexation Area voters vote in the City of South Fulton Referendum and if, after the Referendum takes place, the Supreme Court of Georgia reverses the Superior Court's Order in the Cascade Annexation Litigation, Cascade Annexation Area voters (like FID voters) will only have served to stuff the ballot box.

71.     Defendants are or should be aware that their conduct, in carrying out the City of South Fulton Referendum, will violate Plaintiff's and similarly situated voters' rights to equal protection of law.

72.     Plaintiff will suffer irreparable harm if the City of South Fulton Referendum is held because his vote will be diluted and debased or treated differently from those of other voters.

73.     Plaintiff also will suffer irreparable harm if the City of South Fulton Referendum is held because, if the referendum passes, Plaintiff's and similarly situated voters' tax rates will be subject to a municipal tax base that was not established and, thus, was unknowable prior to their vote.

74.    Plaintiff has no adequate remedy at law.

75.    Any harm caused by postponing the City of South Fulton Referendum is far outweighed by the harm Plaintiff and similarly situated voters will suffer should the Referendum go forward in November.

76.    Enjoining the Referendum until such time as the Georgia General Assembly enacts a valid referendum-authorizing bill or, at minimum, until sometime after the Supreme Court of Georgia issues its final decision in the Cascade Annexation Appeal will serve the public interest.

77.    Moreover, HB 514, itself, expressly authorizes postponing the City of South Fulton Referendum.

### COUNT 2: VIOLATION OF SUBSTANTIVE DUE PROCESS OF LAW

78.    Plaintiff incorporates by reference all of the allegations set forth above as if fully set forth herein.

79.    HB 514 is unconstitutional, null, and void because it violates Plaintiff's right to substantive due process of law afforded by the United States Constitution.

80.    Because the City of South Fulton Referendum creates a situation where FID residents will dilute and debase the votes of non-FID voters and where the Cascade Annexation Area residents may dilute and debase the votes of non-Cascade Annexation Area voters, the Referendum threatens to deprive Plaintiff and other

voters who do not reside in the FID or the Cascade Annexation Area of their substantive due process right to vote and have their votes counted equally.

81.     Further, substantive due process requires that voters not be misled about "what they are voting for or against." *Burton v. Ga.*, 953 F.2d 1266, 1269 (11th Cir. 1992) (quoting *Burger v. Judge*, 365 F. supp. 504, 511 .16 (D. Mont. 1973), *aff'd*, 414 U.S. 1058 (1973)).

82.     The language on a ballot must not be so indefinite and ambiguous that it does not inform voters about the topic on which they are voting. Rather, voters must be afforded a reasonable opportunity to examine the full text of an act in order to make an informed decision when they go to the polls to vote, and the full text of the act must adequately inform voters about the topic on which they are voting.

83.     The ballot language does not inform voters that the City of South Fulton will not include the FID and may or may not include the Cascade Annexation Area depending on the Supreme Court of Georgia's decision in the Cascade Annexation Appeal.

84.     The ballot language also does not apprise voters that, since the new city will not include the FID and may not include the Cascade Annexation Area, the city will not include a significant source of tax revenue and the residents of the new city will likely face higher taxes.

85.   Because the ballot language does not adequately inform voters about the topic on which they are voting, voters will be deprived of and denied substantive due process of law if the City of South Fulton Referendum goes forward.

86.   And even if voters read the full text of HB 514, it *still* is impossible for voters to know the boundaries for the proposed city until *after* the Supreme Court of Georgia renders its decision in the Cascade Annexation Appeal.

87.   The text of HB 514 does not inform voters that the FID will not be included in the new city and that the Cascade Annexation Area may or may not be included in the new city depending on the Supreme Court of Georgia's decision in the Cascade Annexation Appeal.

88.   Yet, now that the new city will not include the FID, city taxes will be immensely higher, and taxes will increase even more if, after the Referendum, the Supreme Court of Georgia issues an opinion that places the Cascade Annexation Area outside of the reach of the new City of South Fulton.

89.   Defendants are or should be aware that their conduct, in carrying out the City of South Fulton Referendum, will violate Plaintiff's and similarly situated voters' rights to substantive due process of law.

90.   Plaintiff will suffer irreparable harm if the City of South Fulton Referendum is held because his vote will be diluted and debased or treated differently from those of other voters.

91.   Plaintiff also will suffer irreparable harm if the City of South Fulton Referendum is held next month because, if the referendum passes, Plaintiff's and similarly situated voters' tax rates will be subject to a municipal tax base that was not established and, thus, was unknowable prior to their vote.

92.   Plaintiff has no adequate remedy at law.

93.   Any harm caused by postponing the City of South Fulton Referendum is far outweighed by the harm Plaintiff and similarly situated voters will suffer should the Referendum go forward in November.

94.   Enjoining the Referendum until such time as the Georgia General Assembly enacts a valid referendum-authorizing bill or, at minimum, until sometime after the Supreme Court of Georgia issues its final decision in the Cascade Annexation Appeal will serve the public interest.

95.   Moreover, HB 514, itself, expressly authorizes postponing the City of South Fulton Referendum.

**WHEREFORE**, Plaintiff asks the Court to:

(a)   Declare HB 514 unconstitutional, null, and void;

(b)    Enjoin Defendants from holding the City of South Fulton Referendum until such time as the Georgia General Assembly enacts a valid bill authorizing such a referendum, or, alternatively, enjoin Defendants from holding such a referendum until sometime after the Supreme Court of Georgia issues a final decision in the Cascade Annexation Appeal and the legal issues surrounding the FID and the 1979 LCA are settled;

(c)    Retain jurisdiction over Defendants for such period of time as may be appropriate to ensure Defendants' compliance with relief ordered by this Court;

(d)    Award Plaintiff his attorneys' fees and costs under 42 U.S.C. § 1988; and

(e)    Award any other and further relief the Court deems just and proper under the circumstances.

Respectfully submitted this 14th day of October, 2016.

                                HOLLAND & KNIGHT LLP

                                */s/ Robert S. Highsmith Jr.*
                                Robert S. Highsmith Jr.
                                State Bar of Georgia No. 352777
                                Keisha O. Coleman
                                State Bar of Georgia No. 844720
                                Lindsey Sciavicco

State Bar of Georgia No. 783366
Regions Plaza, Suite 1800
1180 West Peachtree Street NW
Atlanta, Georgia 30309
Tel. 404.817.8500
robert.highsmith@hklaw.com
keisha.coleman@hklaw.com
lindsey.sciavicco@hklaw.com

## **CERTIFICATION OF EFFORTS MADE TO GIVE NOTICE**

I hereby certify that on the 14th day of October, 2016, I have notified the

Defendants, and provided them with copies, of the following:

    1.    **VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; and**

    2.    **PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND INCORPORATED MEMORANDUM OF LAW,**

by delivering same, via email, to:

Patrise M. Perkins-Hooker, Esq.
County Attorney
Office of the Fulton County Attorney
141 Pryor Street, S.W., Suite 4038
Atlanta, Georgia 30303
patrise.hooker@fultoncountyga.gov.

I further certify that I am in the process of endeavoring to obtain Defendants'

acceptance of service and, otherwise, will properly effect service upon Defendants

as required by the Federal Rules of Civil Procedure.

Respectfully submitted this 14th day of October, 2016.

        HOLLAND & KNIGHT LLP

        */s/ Robert S. Highsmith Jr.*
        Robert S. Highsmith Jr.
        State Bar of Georgia No. 352777

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JOHN DAVIS,

                Plaintiff,

     v.

MARY CAROLE COONEY, in her official
capacity as Chairperson of the Fulton County
Board of Registration and Elections; DAVID J.
BURGE, in his official capacity as Vice-Chair of
the Fulton County Board of Registration and
Elections; and LUTHER W. BECK, RUKIYA S.
THOMAS, and STAN MATARAZZO, in their
official capacities as Members of the Fulton
County Board of Registration and Elections, and
RICHARD BARRON, in his official capacity as
Chief Administrative Officer to the Fulton
County Board of Registration and Elections

                Defendants.

Civil Action File No:

## **VERIFICATION OF JOHN DAVIS**

John Davis personally appeared before me, the undersigned officer duly

authorized by law to administer oaths, and, after being duly sworn, deposes and

states that he has reviewed the VERIFIED COMPLAINT FOR DECLARATORY

AND INJUNCTIVE RELIEF in the above-styled action and that the facts contained

therein are true and correct to the best of his knowledge, information, and belief.

This _____ day of October, 2016.

JOHN DAVIS

Sworn to and subscribed before me
this _6_ day of _October_ , 2016

Notary Public

My commission expires:

_____
[NOTARY COUNTY, GEORGIA]

2

#48151847_v1