## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JOHN DAVIS,<br><br>              Plaintiff,<br><br>    v.<br><br>MARY CAROLE COONEY, in her official capacity as Chairperson  of the Fulton County Board of Registration and Elections; DAVID J. BURGE, in his official capacity as Vice-Chair of the Fulton County Board of Registration and Elections; LUTHER W. BECK, RUKIYA S. THOMAS, and STAN MATARAZZO, in their official capacities as Members of the Fulton County Board of Registration and Elections; and RICHARD BARRON, in his official capacity as Chief Administrative Officer to the Fulton County Board of Registration and Elections,<br><br>              Defendants. | Civil Action File No: |

## PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND INCORPORATED MEMORANDUM OF LAW

Plaintiff John Davis moves the Court, in accordance with Federal Rule of

Civil Procedure 65(b) and the relief requested in Plaintiff's Verified Complaint,[1] to

---

[1] A copy of the Verified Complaint for Declaratory and Injunctive Relief is attached hereto as **Exhibit 1**.

issue a temporary restraining order, enjoining Defendants Mary Carole Cooney, David J. Burge, Luther W. Beck, Rukiya S. Thomas, Stan Matarazzo, and Richard Barron—all members or officers of the Fulton County Board of Registration and Elections—from holding a November 2016 referendum to vote on incorporation of the proposed "City of South Fulton" in order to prevent depriving Plaintiff and similarly situated voters of their constitutional rights to equal protection and due process of law.

## I.     INTRODUCTION

Georgia House Bill 514 (signed into law on April 26, 2016), authorizes a November 2016 referendum for residents of unincorporated Fulton County to vote on the creation of a new "City of South Fulton" (the "City of South Fulton Referendum" or "Referendum"). *See* H.B. 514, 153d Gen. Assemb., Reg. Sess. (Ga. 2016).

Because of an October 3, 2016 Supreme Court of Georgia opinion in one lawsuit, however, and another lawsuit pending before that court that will not be decided before the Referendum, Plaintiff's and similarly situated unincorporated Fulton County voters' rights will be diluted and debased if the Referendum takes place next month. This dilution and debasement arises *because House Bill 514*

*requires Defendants to count the votes of persons who <u>will not</u> and others who <u>may not</u> even reside in the proposed new city.*

Moreover, neither the ballot language nor the full text of House Bill 514 informs voters of the lawsuits and their potential impact on the proposed city's boundaries and tax base. And even if they did, because of the lawsuit that remains pending before the Supreme Court of Georgia, voters still would be unable to ascertain the boundaries and tax base of the proposed city at the time of the Referendum.

Thus, if the Referendum goes forward in November 2016, it will deprive Plaintiff and similarly situated voters of their constitutional rights to equal protection and due process of law in at least 2 ways:

(1)    Plaintiff and similarly situated voters' votes will be treated differently from and diluted and debased by votes cast by individuals who reside within certain areas of unincorporated Fulton County; and,

(2)    Plaintiff and similarly situated voters will be forced to vote on incorporation of a city without adequate information about the topic on which they are voting.

This Court should declare House Bill 514 unconstitutional and enjoin the Referendum (or, at the very least, enjoin the Referendum until the legislature enacts

a valid referendum-authorizing bill) because Plaintiff is substantially likely to prevail on the merits of its claims; Plaintiff and similarly situated voters will suffer irreparable harm unless the Court grants injunctive relief; the harm to Plaintiff outweighs any harm Defendants might suffer from the injunction, particularly since House Bill 514 itself provides for postponing the Referendum; and an injunction will serve the public interest. Because the Referendum is scheduled to take place on November 8, 2016 (less than 1 month from now), an injunction is needed in order to timely protect Plaintiff's and similarly situated voters' constitutional rights.

## II.    FACTUAL BACKGROUND

### A.    The 1979 Local Constitutional Amendment Creating—and Prohibiting the Annexation or Incorporation of—the Fulton County Industrial District

In 1979, Georgia's General Assembly passed a Local Constitutional Amendment (the "1979 LCA") establishing the Fulton County Industrial District (the "FID"), an industrial, tax-rich territory located within Fulton County, Georgia. 1979 Ga. Laws 1797. The 1979 LCA prohibits the annexation or incorporation of any part of the FID. 1979 Ga. Laws 1979, 1798-99.

On March 18, 2015, the City of Atlanta—which seeks to annex certain portions of the FID—sued Fulton County, Georgia, for, among other things, a declaratory judgment that the 1979 LCA is invalid and void. *See City of Atlanta v.*

*Fulton Cnty.*, 2015-CV-258507 (Super. Ct. Fulton Cnty. Aug. 31, 2015) (the "FID Litigation"). On August 31, 2015, the Superior Court of Fulton County entered an order in the FID Litigation declaring the 1979 LCA void. *Id*. Fulton County appealed the August 31, 2015 Order to the Supreme Court of Georgia. *See Fulton Cnty. v. City of Atlanta*, S16A0689 (Ga. 2016) (the "FID Litigation Appeal"). On October 3, 2016, the Supreme Court of Georgia entered an order reversing the Superior Court's order invalidating the 1979 LCA. *Fulton Cnty. v. City of Atlanta*, S16A0689, 2016 WL 5758991, at *1 (Ga. Oct. 3, 2016). Accordingly, the 1979 LCA has not been invalidated and FID cannot be annexed or incorporated but must remain part of unincorporated Fulton County.

### B.   House Bill 514 and the Potential City of South Fulton

Meanwhile, in March 2016, the Georgia General Assembly passed House Bill 514 ("HB 514" or "Bill"), and Governor Nathan Deal signed it into law on April 26, 2016. H.B. 514. HB 514 authorizes a November 2016 referendum for residents of unincorporated Fulton County to vote on whether they want to become a new "City of South Fulton." H.B. 514, § 7.14. HB 514 directs:

> The election superintendent of Fulton County shall call a special election for the purpose of submitting this Act to the qualified voters of the proposed City of South Fulton, as provided in Section 7.13 of this charter, for approval or rejection. The superintendent shall set the date of such election for the Tuesday next following the first Monday

> in November, 2016. The superintendent shall issue the call
> for such election at least 30 days prior to the date thereof.

*Id.* The Bill further states that "[i]t shall be the duty of the superintendent to hold

and conduct such election" and that "[i]t shall be his or her further duty to certify the

result thereof to the Secretary of State." *Id*.

Qualified electors for purposes of the Referendum include "those qualified

electors of Fulton County residing within the corporate limits of the City of South

Fulton as described in Section 1.11 [of HB 514]." H.B. 514, § 7.13. According to

Section 1.11, the corporate limits:

> [S]hall include all unincorporated areas of Fulton County,
> including the Fulton County Industrial District, as such
> exist on July 1, 2016; provided, **however, that if the local
> constitutional amendment establishing the Fulton
> County Industrial District is not repealed or
> determined judicially to be of no force and effect prior
> to the first municipal election being conducted
> [currently slated for March 2017], the Fulton County
> Industrial District shall not become a part of the City
> of South Fulton**.

H.B. 514, § 1.11 (emphasis added). The October 3, 2016 opinion in the FID

Litigation Appeal ensures with certainty that the FID **will not and cannot become**

**a part of the City of South Fulton**. Yet, even though the Georgia Constitution

prohibits the FID from becoming a part of the City of South Fulton, residents of the

FID are considered "qualified electors" and will be able to vote in the Referendum,

thereby diluting and debasing the votes of Plaintiff and every other voter who *will* be in the new city if the Referendum passes.

HB 514 also authorizes the city council of the new city to assess, levy, and collect taxes and fees and establish a millage rate for the city property tax. H.B. 514, §§ 1.12, 6.10, 6.11, 6.12, 6.15, 6.17. However, neither the ballot for the City of South Fulton Referendum, nor the full text of HB 514, informs voters that the FID will not become a part of the new city.[2]

### C.        Disputed Cascade Area Annexations

To complicate matters further, following the passage of HB 514, certain residents in the Cascade-area neighborhood of unincorporated Fulton County petitioned for annexation into the City of Atlanta (the "Cascade Area Annexations").[3] The Atlanta City Council approved the Cascade Area Annexations ordinances on June 20, 2016 and June 28, 2016. Mayor Kasim Reed signed the

---

[2] Prior to the October 3, 2016 opinion in the FID Litigation Appeal, voters were not even informed of the contingent possibility that the new city might not include the FID. The ballot language states only: "Shall the Act incorporating the City of South Fulton in Fulton County and granting the homestead exemptions described therein be approved?" H.B. 514, § 7.14.

[3] The petitioned annexation areas include: (1) Danforth Road; (2) the Cottages at Cascade; (3) Cascade Manor; (4) Cascade Falls; and (5) certain areas known as the Cascade Business Corridor.

annexation ordinances on June 21, 2016 and June 28, 2016, and the petitioned areas (the "Cascade Annexation Area") were annexed into the City of Atlanta.

On July 19, 2016, a group of plaintiffs sued the City of Atlanta, challenging the Cascade Area Annexations. *See Mays et al. v. City of Atlanta*, 2016CV77840 (Super. Ct. Fulton Cnty. Sept. 8, 2016) (the "Cascade Annexation Litigation"). On September 8, 2016, the Superior Court of Fulton County held the Cascade Area Annexations were invalid. *Id.* The City of Atlanta has appealed to the Supreme Court of Georgia. *See Mays et al. v. City of Atlanta*, S17M0239 (Ga. 2016) (the "Cascade Annexation Appeal").

On September 20, 2016, the Supreme Court of Georgia entered an order denying a motion to expedite the appeal and holding that, "insofar as the notice of appeal serves as supersedeas of [the final Superior Court Order], the supersedeas is lifted instanter." *Id.* (Ga. Sept. 20, 2016). Accordingly, residents of the Cascade Annexation Area remain residents of unincorporated Fulton County *for the time being* and for the purposes of the November 2016 election. However, depending on the eventual outcome of the Cascade Annexation Appeal, it is unknowable whether Cascade Annexation Area residents ultimately will remain residents of unincorporated Fulton County or whether they will be residents of the City of Atlanta.

Thus, although residents of the Cascade Annexation Area will be able to vote on cityhood, their votes—like those of individuals who reside within the FID—threaten to dilute Plaintiff's and other similarly situated unincorporated Fulton County voters' votes.

### D.     Upcoming Dates Related to the November 2016 Election

Absent an injunction, Defendants will conduct the City of South Fulton Referendum on Tuesday, November 8, 2016. *See* H.B. 514, § 7.14. Absentee ballots could have been mailed out as early as September 20, 2016. O.C.G.A. §§ 21-2-384(a); *see also 2016 Elections and Voter Registration Calendar*, http:/sos.ga.gov/index. php/elections/2016_ election_ dates (last visited Sept. 16, 2016) (hereinafter "*Elections Calendar*"). The last day a person may register and be eligible to vote in the November election is October 11, 2016. O.C.G.A. § 21-2-224(a); *Elections Calendar*. Advanced, in-person voting begins on October 17, 2016. O.C.G.A. § 21-2-385(d)(1); *Elections Calendar*. And, mandatory Saturday voting for the November election will be held on October 29, 2016. O.C.G.A. § 21-2-385(d)(1); *Elections Calendar*. Thus, the issues raised and relief requested in this Motion are highly time-sensitive.

**E.    HB 514's Express Authorization to Postpone the Referendum**

Plaintiff is aware of no other recent municipal incorporation or annexation in Georgia where certain residents' votes were guaranteed, by the very referendum-authorizing act, to be diluted and debased by the votes of individuals who cannot possibly become residents of the new city. Plaintiff similarly is aware of no other recent municipal incorporation or annexation in Georgia where voters were required to vote on the incorporation of a new city even though the very boundaries of the city depended on a contingency that would not be determined until after the election. Yet, that is precisely what unincorporated Fulton County voters will be required to do should the Referendum take place in November. Perhaps because the General Assembly anticipated the very constitutional predicament now before us, it included language in HB 514 itself allowing the Referendum to be postponed:

> It is the intention of the General Assembly that this Act be construed as directory rather than mandatory with respect to any date prescribed in this Act. **If it is necessary to delay any action called for in this Act for providential cause or any other reason**, it is the intention of the General Assembly that the action be delayed rather than abandoned . . . . (1) **If it is not possible to hold the referendum election . . . on the date specified . . . then such referendum shall be held as soon thereafter as is reasonably practicable** . . . .

H.B. 514, § 7.17 (emphasis added).

## III.   ARGUMENT AND CITATION OF AUTHORITY

The decision of whether to grant a temporary restraining order rests entirely within the district court's discretion. *See, e.g., Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc*., 303 F.3d 1242, 1246 (11th Cir. 2002). A temporary restraining order serves to preserve the status quo and prevent allegedly irreparable injury until the court has the opportunity to render a decision on the merits. *United States v. DBB, Inc*., 180 F.3d 1277, 1282 (11th Cir. 1999). The movant need only establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that its own injury outweighs the injury to the nonmovant; and (4) that the injunction would not disserve the public interest. *Siebert v. Allen,* 506 F.3d 1047, 1049 (11th Cir. 2007). All four factors favor the issuance of a temporary restraining order enjoining the City of South Fulton Referendum.

### A.   Plaintiff is substantially likely to succeed on the merits.

#### 1.   *HB 514 violates Plaintiff's right to vote and to have his vote counted equally.*

The right to vote and the right to have one's vote counted and given equal weight are fundamental constitutional rights protected by, *inter alia*, the right to substantive due process of law and the Equal Protection Clause of the Fourteenth Amendment. *See Black v. McGuffage*, 209 F. Supp. 2d 889, 900 (N.D. Ill. 2002).

A violation of substantive due process is indicated, and relief under 42 U.S.C. § 1983 warranted, where an "election process itself reaches the point of patent and fundamental unfairness." *Duncan v. Poythress*, 515 F. Supp. 327, 336 (N.D. Ga. 1981), *aff'd*, 657 F.2d 691 (5th Cir. 1981) (stating the right to vote is protected by the due process clause); *see also Black*, 209 F. Supp. 2d at 900 (holding plaintiffs who sought to enjoin the use of punch-card voting systems—on basis that such systems threatened to dilute or otherwise deprive voters of having their votes counted equally—alleged violation of substantive due process of law).

Similar protections are guaranteed by the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, which provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. Under the "one person, one vote" principle, the Equal Protection Clause protects each qualified voter's right to vote in an election and to have his or her vote counted equally. *See generally Reynolds v. Sims*, 377 U.S. 533, 554, 558 (1964); *see also Crumly v. Cobb Cnty. Bd. of Elections & Voter Registration*, 892 F. Supp. 2d 1333, 1342 (N.D. Ga. 2012). "The right to have one's vote counted is as open to protection . . . as the right to put a ballot in a box [and the] right to vote can neither be denied outright . . . nor diluted by ballot-box stuffing," and "the right to suffrage can be denied by a debasement or dilution of the weight of

a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Reynolds*, 377 U.S. at 554-55. Thus, "the States are required to insure that each person's vote counts as much, insofar as it as practicable, as any other person's . . . the right to vote in an election is protected by the United States Constitution against dilution or debasement." *Hadley v. Junior Coll. Dist. of Metro. Kan. City, Mo*., 397 U.S. 50, 54 (1970).

The Supreme Court has applied the "one person, one vote" principle to Georgia election issues in the past. In *Gray v. Sanders*, 372 U.S. 368 (1963), the Supreme Court held that the District Court for the Northern District of Georgia properly enjoined Georgia from using a particular system of counting votes because it effectively weighted some votes more than others depending on the voters' geographical area. The Court reasoned:

> If a State in a statewide election weighted the male vote more heavily than the female vote or the white vote more heavily than the Negro vote, none could successfully contend that that discrimination was allowable. How then can one person be given twice or 10 times the voting power of another person in a statewide election merely because he lives in a rural area or because he lives in the smallest rural county? . . . all who participate in [an] election are to have an equal vote—whatever their race, whatever their sex, whatever their occupation, whatever their income, *and wherever their home may be in that geographical unit.*

*Id*. at 379 (internal citation omitted) (emphasis added). Therefore, "[d]iluting the weight of votes because of place of residence impairs basic constitutional rights

under the Fourteenth Amendment." *Reynolds*, 377 U.S. at 566; *see also Black*, 209 F. Supp. 2d at 900  (holding that the system of using punch-card voting in some districts threatened a potential equal protection violation in addition to violating voters' substantive due process rights).

Indeed, the City of South Fulton Referendum threatens to dilute and debase Plaintiff's and other voters' votes even more thoroughly than the state legislative districts that this Court held unconstitutional and enjoined in *Larios v. Cox*, 300 F. Supp. 2d 1320 (N.D. Ga. 2004). In that case, the Georgia General Assembly had underpopulated certain legislative districts and overpopulated others. This Court held that those districts "arbitrarily and discriminatorily dilute and debase the weight of certain citizens' votes by intentionally and systematically underpopulating districts in rural south Georgia and inner-city Atlanta, correspondingly overpopulating the districts in suburban areas surrounding Atlanta, and by underpopulating the districts held by incumbent Democrats." *Id*. at 1322. In that case, this Court found constitutional fault with a scheme that had certain legislators elected by populations that were almost ten percent smaller than the populations electing other legislators.

Here, the constitutional violation is far more stark. Under HB 514, <u>100 percent</u> of Plaintiff's vote will be canceled out if even <u>one</u> voter who will not live in the

proposed city is allowed to vote in the Referendum. Indeed, if permitted as planned, the Referendum—and the boundaries of the would-be city—will be akin to a state Senate district election that allows persons to vote for that district's senator who do not even live in the district.  For each such non-resident vote cast, one vote of a resident of the proposed city would be canceled out completely, diluted, and debased.  It is difficult to conceive of the *Larios* court countenancing such a result.

The Referendum will deprive Plaintiff and similarly situated voters of their right to vote because their votes <u>will be</u> diluted by voters who reside in the FID, but who cannot become part of the new city, and <u>may</u> be diluted by voters who reside in the Cascade Annexation Area. The 1979 LCA is in effect and the FID cannot be incorporated. Yet, HB 514 allows residents of the FID to vote on cityhood anyway. FID residents' votes, therefore, will serve no purpose whatsoever other than to dilute non-FID residents' votes. Similarly, because the Supreme Court of Georgia has yet to issue an opinion in the Cascade Annexation Appeal, and is virtually certain not to issue an opinion until sometime in 2017, the validity of the Cascade Area Annexations will not be determined until after the City of South Fulton Referendum takes place. If, after the November 2016 election takes place, the Supreme Court of Georgia reverses the Superior Court's Order invalidating the Cascade Area Annexations in the Cascade Annexation Appeal, the Cascade Annexation Area will

not be included within the boundaries of the City of South Fulton. Consequently, Cascade Annexation Area voters will have voted on cityhood even though those voters, like those who live within the FID, will not become residents of the City of South Fulton.

Accordingly, Plaintiff and other similarly situated voters' right to vote, to have their votes counted equally, and to equal protection of the laws will be violated if the City of South Fulton Referendum goes forward in November 2016.

> ### 2.   HB 514 fails to inform voters about the topic on which they are voting.

Substantive due process requires that voters not be misled about "what they are voting for or against." *Burton v. Ga.*, 953 F. 2d 1266, 1269 (11th Cir. 1992) (quoting *Burger v. Judge*, 365 F. Supp. 504, 511 n.16 (D. Mont. 1973), *aff'd*, 414 U.S. 1058 (1973)). Where the ballot language on a referendum is so indefinite and ambiguous that it does not adequately inform voters about the topic on which they are voting, the fundamental right to vote is violated. *See, e.g.*, *Adams v. City of Cornelia*, 58 S.E.2d 398 (Ga. 1950) (holding a statute unconstitutional because the act's caption described one territory to be annexed into a city while the body of the act addressed another; "interested parties[] are entitled to be put on notice from the caption what is about to be done by the act."); *Bray v. City of East Point*, 46 S.E.2d

257 (Ga. 1948) (holding statute unconstitutional because the title enumerated only some parts of the total amount of land to be included in annexed territory).

Voters must be "afforded reasonable opportunity to examine the full text of the proposed amendment," *Burton,* 953 F. 2d at 1269, and the full text of the act must adequately inform voters about the topic on which they are voting. An injunction is warranted where the ballot language on a referendum and the full text of the legislation "so upset the evenhandedness of the referendum that it work[s] a 'patent and fundamental unfairness' on the voters." *Id.*

The ballot language for the City of South Fulton Referendum does not adequately inform voters that the City of South Fulton will not include the FID[4] and may or may not include the Cascade Annexation Area but, instead, asks only: "Shall the Act incorporating the City of South Fulton in Fulton County and granting the homestead exemptions described therein be approved?" H.B. 514 at § 7.14. The ballot provides no notice that the FID will not be included and that inclusion of the Cascade Annexation Area in the City of South Fulton is uncertain and contingent on the Supreme Court of Georgia's decision in the Cascade Annexation Appeal. The

---

[4] Even prior to the October 3, 2016 Supreme Court of Georgia opinion in the FID Litigation Appeal ensuring that the FID cannot become part of the new city, the ballot language failed to inform voters of even the contingent possibility that the FID might not be included.

ballot certainly does not apprise voters that, if the new city does not include the FID and Cascade Annexation Area, the city will not include a significant source of tax revenue and the residents of the new city will likely face higher taxes.

And even if voters read the full text of HB 514, it still is impossible for voters to know the boundaries for the proposed city until *after* the Supreme Court of Georgia renders its decision in the Cascade Annexation Appeal. Because the ballot language and even the text of HB 514 fail adequately to inform voters about the topic on which they are voting, voters will be deprived of and denied substantive due process of law if the City of South Fulton Referendum goes forward.

Further, the language in HB 514 concerning the proposed new city's power to tax also is indefinite, incomplete, and ambiguous. Although HB 514 authorizes the future city council of the new city to assess, levy, and collect taxes and fees and establish a millage rate for the city property tax, H.B. 514 at, *e.g.*, §§ 1.12, 6.10, 6.11, 6.12, 6.15, 6.17, the territory and, thus, the tax base of the new city were highly contingent on the Supreme Court of Georgia's decision in the FID Litigation and remain contingent on the Supreme Court of Georgia's decision in the Cascade Annexation Appeal. Now that the new city will not include the FID, city taxes will likely be higher, and taxes will likely increase even more if, after the Referendum, the Supreme Court of Georgia issues an opinion that places the Cascade Annexation

Area outside of the reach of the new City of South Fulton. But voters have no way of knowing that the new city will not include the FID—a significant source of tax revenue—and may not include the Cascade Annexation Area.

Thus, the ballot, and even the full text of HB 514, violate voters' rights to substantive due process of law by failing to inform voters about the topic on which they are voting.

**B.    Plaintiff will suffer immediate, irreparable harm if the Court does not grant a temporary restraining order.**

Because Plaintiff seeks a temporary restraining order to prevent the deprivation of his and other similarly situated voters' right to vote, "[he] should not be and [is] not required to make the usual showing of irreparable injury as a prerequisite to relief; rather, such injury is presumed by law." *Harris v. Graddick*, 593 F. Supp. 128, 135 (M.D. Ala. 1984) (seeking injunctive relief under Section 2 of the Voting Rights Act of 1965). Nevertheless, Plaintiff will suffer immediate and irreparable injury if the Defendants hold the City of South Fulton Referendum in November 2016.

"[T]he right of qualified voters ... to cast their votes effectively ... rank[s] among our most precious freedoms." *Ga. State Conference of the NAACP v. Fayette Cnty. Bd. of Comm'rs*, 118 F. Supp. 3d 1338, 1347 (N.D. Ga. 2015) (alterations in original). Because of its great significance in our constitutional scheme, "any illegal

impediment to the right to vote, as guaranteed by the U.S. Constitution or state, would by its nature be an irreparable injury." *Harris*, 593 F. Supp. at 135. When the right to vote is violated, "the public as a whole suffers irreparable injury." *Id.*

This Court and many others have widely recognized that an infringement of the right to vote, including by vote dilution, constitutes an irreparable injury warranting an injunction. *See, e.g.*, *Gray v. Sanders*, 372 U.S. at 380-81; *United States v. Dallas Cnty. Comm'n*, 791 F.2d 831, 831-22 (11th Cir. 1986); *Ga. State Conference of the NAACP*, 118 F. Supp. at 1347; *Harris*, 593 F. Supp. at 135. No amount of money can undo the harm caused by the deprivation of the right to vote. *See Dillard v. Crenshaw Cnty.*, 640 F. Supp. 1347, 1363 (M.D. Ala. 1986) ("Given the fundamental nature of the right to vote, monetary remedies would obviously be inadequate in this case; it is simply not possible to pay someone for having been denied a right of this importance.").

Plaintiff and similarly situated voters will suffer immediate and irreparable harm if the City of South Fulton Referendum takes place in November 2016 because: (1) their votes will be diluted by votes cast by residents of the FID and may be diluted by votes cast by residents of the Cascade Annexation Area; and (2) they will be forced to vote on the incorporation of a potential new city without knowing the city limits and, thus, the tax base, of the proposed city.

C. **The balance of hardships strongly favors Plaintiff and the public, particularly since HB 514, itself, provides that the Referendum may be postponed.**

The harm Plaintiff and other voters will suffer absent an injunction enjoining the Referendum far outweighs any possible harm Defendants will suffer due to such an injunction. Plaintiff seeks protection of "one of the most fundamental rights of our citizens: the right to vote." *Bartlett v. Strickland*, 556 U.S. 1, 10 (2009). "The right to vote freely for [] one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Reynolds*, 377 U.S. at 555. There is no right "more precious in a free country than that of having a voice in [an] election . . . under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). No replacement or compensation can fix the violation of the right to vote. *Dillard* 640 F. Supp. at 1363. Thus, absent injunctive relief, Plaintiffs will suffer severe, irreparable harm.

By contrast, enjoining the City of South Fulton Referendum until Georgia's legislature enacts a valid referendum-authorizing bill or, at the very least, until sometime after the Supreme Court of Georgia issues its decision in the Cascade Annexation Appeal will not harm Defendants **and is expressly allowed by HB 514 itself**. *See Ga. Latino Alliance for Humans Rights v. Deal*, 793 F. Supp. 2d 1317,

1340 (N.D. Ga. 2011), *aff'd in part and rev'd in part on other grounds*, 691 F.3d 1250 (11th Cir. 2012) ("[B]y merely preserving the status quo, [the] injunction will impose no new and onerous burdens on the Defendants."); H.B. 514, § 7.17.

Georgia's General Assembly took care to ensure HB 514 included language stating that the dates prescribed in the Bill are "directory" rather than "mandatory," and the General Assembly even contemplated the need for delaying the Referendum. H.B. 514, § 7.17 ("If it is necessary to delay any action called for in this Act for providential cause or any other reason . . . . If it is not possible to hold the referendum election on the date specified . . . then such referendum shall be held as soon thereafter as is reasonably practicable . . . .). Defendants cannot credibly contend that any harm caused by postponing the Referendum outweighs the harm of proceeding with an unconstitutional election *when the very Bill authorizing the Referendum contemplates the potential need to delay the Referendum and expressly states that the dates prescribed in the bill are not mandatory*.

Even absent provision for postponement in the referendum-authorizing Bill itself, any administrative-type harm that Defendants might identify "cannot begin to compare with the further subjection of [Plaintiff's] denial of his right, to full and equal political participation." *Dillard*, 640 F. Supp. at 1363; *see Johnson v. Halifax Cnty.*, 594 F. Supp. 161, 171 (E.D.N.C. 1984) (finding administrative and financial

burdens on the defendant are not undue in light of the irreparable harm plaintiffs would incur by vote dilution); *Duncan*, 515 F. Supp. at 342 (holding that even if the costs incurred by the state and citizens would be severe, the "restoration of plaintiffs' right to vote outweighs the public expenditure involved"). Therefore, the balance of hardships strongly weighs in favor of Plaintiff and similarly situated voters.

### D.     Granting the requested injunctive relief would advance the public interest.

Protecting Plaintiff's and similarly situated voters' right to vote will serve, rather than adversely affect, public interest. The right to vote is "of the most fundamental significance under our constitutional structure." *Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979); *see also Reynolds*, 377 U.S. at 561 ("Undoubtedly, the right of suffrage is a fundamental matter in a free and democratic society."). By enacting the Voting Rights Act, Congress demonstrated that there is "a strong national mandate for the immediate removal of **all** impediments, intended or not, to equal participation in the election process." *Harris*, 593 F. Supp. at 135 (emphasis added); *see also Gray*, 372 U.S. at 379 ("[W]here the continued presence of such barriers is strongly evident, the public interest commands all appropriate relief necessary to effect the immediate and complete removal of these barriers.").

The requirement to protect the right to suffrage is no less important here, where the Referendum threatens to deprive Plaintiff and similarly situated voters of their rights to vote, to have their votes counted equally, and to be informed about the topic on which they are voting. *See Gray*, 372 U.S. at 379 ("[A]ll who participate in [an] election are to have an equal vote . . . wherever their home may be in that geographical unit."). When the right to vote is violated, "the public as a whole suffers irreparable injury." *Harris*, 593 F. Supp. at 135. Accordingly, enjoining the Referendum until such time as the Georgia General Assembly enacts a valid referendum-authorizing bill or, at minimum, until sometime after the Supreme Court of Georgia issues its final decision in the Cascade Annexation Appeal "is without question in the public interest." *Charles H. Wesley Educ. Found. v. Cox*, 408 F.3d 1349, 1355 (11th Cir. 2005) (finding an injunction's cautious protection of the plaintiffs' franchise-related rights is in the public interest).

## IV.   CONCLUSION

Plaintiff respectfully requests that the Court issue a temporary restraining order enjoining the Defendants from holding the City of South Fulton Referendum until such time as the Georgia General Assembly enacts a valid bill authorizing such a referendum, or, alternatively, until sometime after the Supreme Court of Georgia issues a final decision in the Cascade Annexation Appeal.

HB 514 and the Referendum authorized thereby deprive Plaintiff and similarly situated voters of their constitutional rights to vote and have their votes counted equally and to be informed about the topic on which they are voting. An injunction is appropriate here because: (1) Plaintiff is substantially likely to prevail on the merits of its claims; (2) Plaintiff will suffer immediate, irreparable harm in the absence of injunctive relief; (3) a balance of hardships strongly weighs in favor of Plaintiff, particularly since the Bill itself expressly authorizes postponing the Referendum for providential cause or "any other reason" (H.B. 514, § 7.17); and (4) granting an injunction will advance the public interest. Accordingly, a temporary restraining order enjoining the City of South Fulton Referendum is necessary and appropriate to protect Plaintiff's and similarly situated voters' constitutional rights.

Respectfully submitted this 14th day of October, 2016.

HOLLAND & KNIGHT LLP

*/s/ Robert S. Highsmith Jr.*
Robert S. Highsmith Jr.
State Bar of Georgia No. 352777
Keisha O. Coleman
State Bar of Georgia No. 844720
Lindsey Sciavicco
State Bar of Georgia No. 783366
Regions Plaza, Suite 1800
1180 West Peachtree Street NW
Atlanta, Georgia 30309
Tel. 404.817.8500
robert.highsmith@hklaw.com

keisha.coleman@hklaw.com
lindsey.sciavicco@hklaw.com

## **LR 7.1(D) FONT COMPLIANCE CERTIFICATION**

The undersigned counsel certifies that the within and foregoing was prepared using Times New Roman 14 point font in accordance with Local Rule 5.1 of the United States District Court for the Northern District of Georgia.

Respectfully submitted this 14th day of October, 2016.

HOLLAND & KNIGHT LLP

*/s/ Robert S. Highsmith Jr.*
Robert S. Highsmith Jr.
State Bar of Georgia No. 352777

## <u>CERTIFICATION OF EFFORTS MADE TO GIVE NOTICE</u>

I hereby certify that on the 14th day of October, 2016, I have notified the

Defendants, and provided them with copies, of the following:

1. **VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; and**

2. **PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND INCORPORATED MEMORANDUM OF LAW,**

by delivering same, via email, to:

Patrise M. Perkins-Hooker, Esq.
County Attorney
Office of the Fulton County Attorney
141 Pryor Street, S.W., Suite 4038
Atlanta, Georgia 30303
patrise.hooker@fultoncountyga.gov.

I further certify that I am in the process of endeavoring to obtain Defendants'

acceptance of service and, otherwise, will properly effect service upon Defendants

as required by the Federal Rules of Civil Procedure.

Respectfully submitted this 14th day of October, 2016.

HOLLAND & KNIGHT LLP

*/s/ Robert S. Highsmith Jr.*
Robert S. Highsmith Jr.
State Bar of Georgia No. 352777

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| JOHN DAVIS,<br><br>    Plaintiff,<br><br> v.<br><br>MARY CAROLE COONEY, in her official capacity as Chairperson of the Fulton County Board of Registration and Elections; DAVID J. BURGE, in his official capacity as Vice-Chair of the Fulton County Board of Registration and Elections; LUTHER W. BECK, RUKIYA S. THOMAS, and STAN MATARAZZO, in their official capacities as Members of the Fulton County Board of Registration and Elections; and RICHARD BARRON, in his official capacity as Chief Administrative Officer to the Fulton County Board of Registration and Elections,<br><br>    Defendants. | Civil Action File No: |

**VERIFIED COMPLAINT FOR DECLARATORY**
**AND INJUNCTIVE RELIEF**

Plaintiff asks the Court to declare Georgia House Bill 514 ("HB 514") unconstitutional and invalid and to enjoin the November 2016 referendum on the incorporation of the proposed City of South Fulton (the "City of South Fulton Referendum" or "Referendum") because, *inter alia*, absent such a declaration and

injunction (1) House Bill 514 expressly allows certain persons who **will not** (and certain other persons who may not) ultimately reside in the proposed City of South Fulton to vote in the Referendum, thereby diluting and debasing Plaintiff's and similarly situated voters' votes; and (2) Plaintiff and similarly situated voters will be forced to vote on incorporation of a city without knowing the territorial makeup and tax base of the potential city or whether the new city will include certain portions of Fulton County that are the subject of a pending dispute over annexation into the City of Atlanta.

## THE PARTIES

### Plaintiff

1.     Plaintiff John Davis is a registered voter who resides in a portion of unincorporated Fulton County, Georgia that will be impacted by the City of South Fulton Referendum. Mr. Davis does not reside in the Fulton County Industrial District. Mr. Davis intends to vote in the City of South Fulton Referendum.

### Defendants

2.     The following six Defendants are sued in their official capacities as members or officers of the Fulton County Board of Registration and Elections (the "BRE"):

     a.    Mary Carole Cooney, who is sued in her official capacity as a member and the Chairperson of the BRE, in which capacity she is charged by O.C.G.A. § 21-2-40, 1989 Ga. Laws 4577, 4578, §1, and HB 514 with the power and duty of conducting the City of South Fulton Referendum in November of this year;

     b.    David J. Burge, who is sued in his official capacity as a member and the Vice-Chair of the BRE, in which capacity he is charged by O.C.G.A. § 21-2-40, 1989 Ga. Laws 4577, 4578, §1, and HB 514 with the power and duty of conducting the City of South Fulton referendum in November of this year;

     c.    Luther W. Beck, who is sued in his official capacity as a member of the BRE, in which capacity he is charged by O.C.G.A. § 21-2-40, 1989 Ga. Laws 4577, 4578, §1, and HB 514 with the power and duty of conducting the City of South Fulton Referendum in November of this year;

     d.    Rukiya S. Thomas, who is sued in her official capacity as a member of the BRE, in which capacity she is charged by O.C.G.A. § 21-2-40, 1989 Ga. Laws 4577, 4578, §1, and HB 514 with the power and duty of conducting the City of South Fulton Referendum in November of this year; and

     e.    Stan Matarazzo, who is sued in his official capacity as a member of the BRE, in which capacity he is charged by O.C.G.A. § 21-2-40, 1989 Ga. Laws

4577, 4578, §1, and HB 514 with the power and duty of conducting the City of South Fulton Referendum in November of this year.

       f.     Richard Barron, who is sued in his official capacity as Chief Administrative Officer to the BRE, in which capacity he is charged by O.C.G.A. § 21-2-40, 1989 Ga. Laws 4577, 4581, §11, and HB 514 with the power and duty of conducting the City of South Fulton Referendum in November of this year.

## JURISDICTION AND VENUE

3.     This Court has original subject matter jurisdiction over this action, under 28 U.S.C. § 1331, because it arises under the equal protection and substantive due process clauses of the Fourteenth Amendment of the United States Constitution and under 42 U.S.C. § 1983. The Court has jurisdiction to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

4.     Venue in this District is proper, under 28 U.S.C. § 1391(b), because all of the Defendants reside in this District, and the events giving rise to the claims arose in this District.

## FACTS COMMON TO ALL COUNTS

### The 1979 Local Constitutional Amendment Creating—and Prohibiting the Annexation or Incorporation of—the Fulton County Industrial District

5.     In 1979, Georgia's General Assembly and Fulton County voters passed a Local Constitutional Amendment (the "1979 LCA") establishing the Fulton

4

County Industrial District (the "FID"), an industrial territory located within Fulton County, Georgia, which currently generates significant property tax receipts for Fulton County. 1979 Ga. Laws 1797.

6.      The 1979 LCA prohibits the annexation or incorporation of any part of the FID. 1979 Ga. Laws 1797, 1798-99.

7.      On March 18, 2015, the City of Atlanta—which seeks to annex certain portions of the FID—sued Fulton County, Georgia, for, among other things, a declaratory judgment that the 1979 LCA is invalid and void. *See City of Atlanta v. Fulton Cnty.*, 2015-CV-258507 (Super. Ct. Fulton Cnty. Aug. 31, 2015) (the "FID Litigation").

8.      On August 31, 2015, the Superior Court of Fulton County entered an order in the FID Litigation declaring the 1979 LCA void. *Id.*

9.      On September 24, 2015, Fulton County appealed the August 31, 2015 Order to the Supreme Court of Georgia. *See Fulton Cnty. v. City of Atlanta*, S16A0689 (Ga. 2016) (the "FID Litigation Appeal").

10.     On October 3, 2016, the Supreme Court of Georgia entered an order reversing the Superior Court's order invalidating the 1979 LCA. *Fulton Cnty. v. City of Atlanta*, S16A0689, 2016 WL 5758991, at *1 (Ga. Oct. 3, 2016).

11.    Accordingly, the 1979 LCA has not been invalidated and **the FID cannot be annexed or incorporated but must remain part of unincorporated Fulton County.**

### House Bill 514 and the Potential City of South Fulton

12.    Meanwhile, in March 2016, the month before the Supreme Court of Georgia heard oral argument in the FID Litigation Appeal, Georgia's General Assembly passed HB 514. H.B. 514, 153d Gen. Assemb., Reg. Sess. (Ga. 2016) (copy attached as **Exhibit 1**).

13.    Governor Nathan Deal signed HB 514 into law on April 26, 2016.

14.    HB 514 authorizes a November 2016 referendum for residents of unincorporated Fulton County to vote on the creation of a new "City of South Fulton."

15.    HB 514 directs:

> The election superintendent of Fulton County shall call a special election for the purpose of submitting this Act to the qualified voters of the proposed City of South Fulton, as provided in Section 7.13 of this charter, for approval or rejection. The superintendent shall set the date of such election for the Tuesday next following the first Monday in November, 2016. The superintendent shall issue the call for such election at least 30 days prior to the date thereof.

6

H.B. 514, § 7.14.

16.     HB 514 states that "[i]t shall be the duty of the superintendent to hold and conduct such election" and that "[i]t shall be his or her further duty to certify the result thereof to the Secretary of State." *Id.*

17.     Qualified electors for purposes of the Referendum include "those qualified electors of Fulton County residing within the corporate limits of the City of South Fulton as described in Section 1.11 [of HB 514]." H.B. 514, § 7.13.

18.     HB 514 further states that, should it pass the referendum, the corporate limits of the City of South Fulton:

> [S]hall include all unincorporated areas of Fulton County, including the Fulton County Industrial District, as such exist on July 1, 2016; provided, **however, that if the local constitutional amendment establishing the Fulton County Industrial District is not repealed or determined judicially to be of no force and effect prior to the first municipal election being conducted [currently slated for March 2017], the Fulton County Industrial District shall not become a part of the City of South Fulton.**

H.B. 514, § 1.11 (emphasis added).

7

19.    The October 3, 2016 opinion in the FID Litigation Appeal ensures with certainty that the FID **will not and cannot become a part of the City of South Fulton.**

20.    Yet, even though the Georgia Constitution prohibits the FID from becoming a part of the City of South Fulton, residents of the FID are considered "qualified electors" and will be able to vote in the Referendum, thereby diluting and debasing the votes of Plaintiff and every other voter who **will** be in the new city if the Referendum passes.

21.    HB 514 also authorizes the city council of the new city to assess, levy, and collect taxes and fees and establish a millage rate for the city property tax. *See, e.g.*, H.B. 514, §§ 1.12, 6.10, 6.11, 6.12, 6.15, 6.17.

22.    However, neither the ballot language authorized by HB 514, nor the full text of HB 514, informs voters that the new city will not include the FID, which, if included, would be a significant source of tax revenue for the new city.

### Disputed Cascade Area Annexations

23.    To complicate matters further, following the passage of HB 514, certain resident electors and property owners in the Cascade-area neighborhood of unincorporated Fulton County petitioned for annexation into the City of Atlanta

under the 60% method of annexation afforded by Title 36, Chapter 36 of the Georgia Code (the "Cascade Area Annexations").

24.     The Atlanta City Council approved the Cascade Area Annexations ordinances on June 20, 2016 and June 28, 2016.

25.     Mayor Kasim Reed signed the annexation ordinances on June 21, 2016 and June 28, 2016, and the petitioned areas (the "Cascade Annexation Area") were annexed into the City of Atlanta.

26.     On July 19, 2016, a group of plaintiffs sued the City of Atlanta, challenging the Cascade Area Annexations. *See Mays et al. v. City of Atlanta*, 2016CV77840 (Super. Ct. Fulton Cnty. Sept. 8, 2016) (the "Cascade Annexation Litigation").

27.     On September 8, 2016, the Fulton County Superior Court held that the Cascade Area Annexations were invalid. *Id.*

28.     The City of Atlanta has appealed the decision. *See Mays et al. v. City of* Atlanta, S17M0239 (Ga. 2016) (the "Cascade Annexation Appeal").

29.     On September 20, 2016, the Supreme Court of Georgia entered an order denying a motion to expedite the Cascade Annexation Appeal and holding that, "insofar as the notice of appeal serves as supersedeas of [the final Superior Court Order], the supersedeas is lifted instanter." *Id.* (Ga. Sept. 20, 2016).

9

30.    Accordingly, residents of the Cascade Annexation Area remain residents of unincorporated Fulton County *for the time being* and for the purposes of the November 2016 election.

31.    However, depending on the eventual outcome of the Cascade Annexation Appeal, it is unknowable whether residents of the Cascade Annexation Area ultimately will remain residents of unincorporated Fulton County or whether they will be residents of the City of Atlanta.

32.    Just as the ballot language and text of HB 514 fail to inform voters that the new city will not include the tax-rich FID, the ballot language and text of HB 514 also fail to inform voters that the new city may or may not include the Cascade Annexation Area depending on the Supreme Court of Georgia's decision in the Cascade Annexation Appeal.

### The November 2016 Election

33.    In the November 2016 general election and special election, absent an injunction, Defendants will conduct the City of South Fulton Referendum. *See* H.B. 514, §7.14.

34.    Absentee ballots for the November 2016 election could have been mailed out as early as September 20, 2016. O.C.G.A. § 21-2-384(a); *see also 2016 Elections and Voter Registration Calendar*, http:/sos.ga.gov/index.php/elections/

2016_election_dates (last visited Sept. 16, 2016) ("*2016 Elections and Voter Registration Calendar*").

35.    The last day a person may register and be eligible to vote in the November election is October 11, 2016. O.C.G.A. § 21-2-224(a); *2016 Elections and Voter Registration Calendar.*

36.    Advanced (in-person) voting for the November election begins on October 17, 2016. O.C.G.A. § 21-2-385(d)(1); *2016 Elections and Voter Registration Calendar.*

37.    Mandatory Saturday voting for the November election will be held on October 29, 2016. O.C.G.A. § 21-2-385(d)(1); *2016 Elections and Voter Registration Calendar.*

### HB 514 and the City of South Fulton Referendum Will Deprive Plaintiff of His Right to Vote and to Have His Vote Counted Equally, and HB 514 and the Referendum Ballot Fail to Adequately Inform Voters about the Topic on Which They are Voting

38.    Plaintiff's vote, and the votes of other unincorporated Fulton County voters who do not reside in the FID or the Cascade Annexation Area, will be diluted and debased by votes cast by residents of the FID and may be diluted and debased by votes cast by residents of the Cascade Annexation Area.

39.    If the City of South Fulton Referendum goes forward, registered voters who reside in unincorporated Fulton County—including residents who live in the

11

FID and in the Cascade Annexation Area—may vote on whether to incorporate the City of South Fulton.

40.     Since the Supreme Court of Georgia issued an opinion on October 3, 2016 reversing the Superior Court's order invalidating the 1979 LCA in the FID Litigation Appeal, the 1979 LCA currently has not been invalidated and the FID cannot be annexed.

41.     Yet, HB 514 allows residents of the FID to vote on cityhood *even though those voters will remain residents of unincorporated Fulton County and will not become residents of the City of South Fulton.*

42.     Allowing residents who live in the FID to vote in the City of South Fulton Referendum, even though the election results will not impact them, guarantees that FID voters will serve only to dilute the votes of Plaintiff and other unincorporated Fulton County residents who do not reside within the FID.

43.     Additionally, since the Supreme Court of Georgia has yet to issue an opinion in the Cascade Annexation Appeal, and is virtually certain not to issue an opinion until sometime in 2017, the validity of the Cascade Area Annexations will not be determined until after the City of South Fulton Referendum takes place.

44.     Yet, HB 514 allows residents of the Cascade Area Annexations to vote on cityhood.

45.     If, after the City of South Fulton Referendum takes place, the Supreme Court of Georgia reverses the Fulton County Superior Court Order invalidating the Cascade Area Annexations, then voters who reside within the Cascade Annexations Area will have voted on cityhood even though those voters, like those who reside within the FID, *will not become residents of the City of South Fulton and will instead be residents of the City of Atlanta.*

46.     Allowing residents who live in the Cascade Annexation Area to vote in the City of South Fulton Referendum, even though the election results may not impact them, poses a substantial danger of Cascade Annexation Area voters diluting the votes of Plaintiff and other unincorporated Fulton County residents who do not reside within the Cascade Annexation Area.

47.     Equally problematic is the fact that the ballot language for the City of South Fulton Referendum fails to adequately inform voters about the topic on which they are voting.

48.     The ballot language provides only:

( ) YES   Shall the Act incorporating the City of South Fulton in Fulton County and

( ) NO     granting the homestead exemptions described therein be approved?

49.     The ballot language fails to notify voters that the FID will not be included in the new city and that inclusion of the Cascade Annexation Area in the

City of South Fulton is uncertain and contingent on a decision the Supreme Court of Georgia will make *after* the November election. (And even before the October 3, 2016 Supreme Court of Georgia opinion in the FID Litigation Appeal, the ballot language failed to inform voters of even the contingent possibility that the new city might not include the FID.)

50.    The ballot language certainly does not apprise voters that, if the new city does not include the FID and the Cascade Annexation Area, the city will not include a significant source of tax revenue and the residents of the new city will likely face higher taxes than if the FID were included in the new city.

51.    Even if voters review the full text of HB 514, it *still* is impossible for voters to know the boundaries and tax base of the proposed city at the time they are asked to vote on cityhood, because the boundaries will not and cannot be determined until the Supreme Court of Georgia renders its decision in the Cascade Annexation Appeal.

52.    Further, the language in HB 514 concerning the proposed new city's power to tax is indefinite, incomplete, and ambiguous: although HB 514 authorizes the future city council of the new city to assess, levy, and collect taxes and fees and establish a millage rate for the city property tax, the territory and, thus, the tax base of the new city were highly contingent on the Supreme Court of Georgia's decision

in the FID Litigation Appeal and remain contingent on the Supreme Court of Georgia's decision in the Cascade Annexation Appeal.

53.    Without knowing that the new city will not include the FID, voters have no way of knowing that the new city will not include a significant source of tax revenue.

54.    The Cascade Annexation Area is yet another source of tax revenue that may not be included in the new city, but voters are not alerted to that possibility.

55.    The amount residents of the proposed city will pay in taxes and millage rates depended heavily on whether the new city would include the FID and also will depend on whether the new city will include the Cascade Annexation Area.

56.    Now that the new city will not include the FID, city taxes will be immensely higher, and taxes will increase even more if, after the Referendum, the Supreme Court of Georgia issues an opinion that places the Cascade Annexation Area outside of the reach of the new city of South Fulton.

## Postponing the City of South Fulton Referendum is Necessary and Expressly Provided for in HB 514

57.    Plaintiff is aware of no other recent municipal incorporation or annexation in Georgia where certain residents' votes were guaranteed, by the very referendum-authorizing act, to be diluted and debased by the votes of individuals who cannot possibly become residents of the new city.

58.    Plaintiff is aware of no other recent municipal incorporation or annexation in Georgia where voters were required to vote on the incorporation of a new city even though the very boundaries of the city depended on a contingency that would not be determined until after the election.

59.    Postponing the Referendum until such time as the Georgia General Assembly enacts a valid referendum-authorizing bill or, at minimum, until sometime after the Supreme Court of Georgia issues its final decision in the Cascade Annexation Appeal, is necessary to protect Plaintiff's and other similarly situated voters' rights to equal protection and substantive due process of law.

60.    Moreover (and perhaps because the General Assembly anticipated the type of constitutional quandary that is now upon us), **HB 514 expressly provides for postponing the City of South Fulton Referendum:**

> It is the intention of the General Assembly that this Act be construed as directory rather than mandatory with respect to any date prescribed in this Act. **If it is necessary to delay any action called for in this Act for providential cause or any other reason**, it is the intention of the General Assembly that the action be delayed rather than abandoned . . . . (1) **If it is not possible to hold the referendum election . . . on the date specified . . . then**

> **such referendum shall be held as soon thereafter as is**
> **reasonably practicable** . . . .

H.B. 514, § 7.17 (emphasis added).

61.     Given the absolute certainty that Plaintiff's and other voters' votes **will be** diluted and debased by FID voters, given the looming and problematic uncertainty surrounding the Cascade Annexation Area, and given the Bill's own express provision for postponing the City of South Fulton Referendum, the Court should, at the very least, enjoin the Referendum until the state of the Cascade Area Annexations is settled.

62.     Any harm caused by postponing the City of South Fulton Referendum is far outweighed by the harm Plaintiff and similarly situated voters will suffer should the referendum go forward in November.

## COUNT 1: VIOLATION OF EQUAL PROTECTION OF THE LAW

63.     Plaintiff incorporates by reference all of the allegations set forth above as if fully set forth herein.

64.     HB 514 is unconstitutional, null, and void because it violates Plaintiff's and other similarly situated voters' rights to equal protection of the law afforded by the United States Constitution.

65.     The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, §1.

66.     Under the "one person, one vote" principle, the Equal Protection Clause protects each qualified voter's right to vote in an election and to have his or her vote counted equally. *See generally Reynolds v. Sims*, 377 U.S. 533, 554, 558 (1964); *see also Crumly v. Cobb Cnty. Bd. of Elections & Voter Registration*, 892 F. Supp. 2d 1333, 1342 (N.D. Ga. 2012). "The right to have one's vote counted is as open to protection . . . as the right to put a ballot in a box [and the] right to vote can neither be denied outright . . . nor diluted by ballot-box stuffing." *Reynolds*, 377 U.S. at 554.

67.     "States are required to insure that each person's vote counts as much, insofar as it is as practicable, as any other person's . . . the right to vote in an election is protected by the United States Constitution against dilution or debasement." *Hadley v. Junior Coll. Dist. of Metro. Kan. City, Mo*., 397 U.S. 50, 54 (1970).

68.     The City of South Fulton Referendum will deprive Plaintiff, and other voters who live outside the FID, of the right to equal protection of the law, because FID residents' votes **will** dilute and debase non-FID residents' votes, even though the City of South Fulton Referendum will not impact FID residents.

69.     Plaintiff's vote also may be diluted and debased by voters who live within the Cascade Annexation Area since, like residents of the FID, the Cascade Annexation Area residents will be allowed to vote in the City of South Fulton Referendum even though they later may be deemed residents of the City of Atlanta.

70.     In other words, if Cascade Annexation Area voters vote in the City of South Fulton Referendum and if, after the Referendum takes place, the Supreme Court of Georgia reverses the Superior Court's Order in the Cascade Annexation Litigation, Cascade Annexation Area voters (like FID voters) will only have served to stuff the ballot box.

71.     Defendants are or should be aware that their conduct, in carrying out the City of South Fulton Referendum, will violate Plaintiff's and similarly situated voters' rights to equal protection of law.

72.     Plaintiff will suffer irreparable harm if the City of South Fulton Referendum is held because his vote will be diluted and debased or treated differently from those of other voters.

73.     Plaintiff also will suffer irreparable harm if the City of South Fulton Referendum is held because, if the referendum passes, Plaintiff's and similarly situated voters' tax rates will be subject to a municipal tax base that was not established and, thus, was unknowable prior to their vote.

74.     Plaintiff has no adequate remedy at law.

75.     Any harm caused by postponing the City of South Fulton Referendum is far outweighed by the harm Plaintiff and similarly situated voters will suffer should the Referendum go forward in November.

76.     Enjoining the Referendum until such time as the Georgia General Assembly enacts a valid referendum-authorizing bill or, at minimum, until sometime after the Supreme Court of Georgia issues its final decision in the Cascade Annexation Appeal will serve the public interest.

77.     Moreover, HB 514, itself, expressly authorizes postponing the City of South Fulton Referendum.

## COUNT 2: VIOLATION OF SUBSTANTIVE DUE PROCESS OF LAW

78.     Plaintiff incorporates by reference all of the allegations set forth above as if fully set forth herein.

79.     HB 514 is unconstitutional, null, and void because it violates Plaintiff's right to substantive due process of law afforded by the United States Constitution.

80.     Because the City of South Fulton Referendum creates a situation where FID residents will dilute and debase the votes of non-FID voters and where the Cascade Annexation Area residents may dilute and debase the votes of non-Cascade Annexation Area voters, the Referendum threatens to deprive Plaintiff and other

voters who do not reside in the FID or the Cascade Annexation Area of their substantive due process right to vote and have their votes counted equally.

81.     Further, substantive due process requires that voters not be misled about "what they are voting for or against." *Burton v. Ga.*, 953 F.2d 1266, 1269 (11th Cir. 1992) (quoting *Burger v. Judge*, 365 F. supp. 504, 511 .16 (D. Mont. 1973), *aff'd*, 414 U.S. 1058 (1973)).

82.     The language on a ballot must not be so indefinite and ambiguous that it does not inform voters about the topic on which they are voting. Rather, voters must be afforded a reasonable opportunity to examine the full text of an act in order to make an informed decision when they go to the polls to vote, and the full text of the act must adequately inform voters about the topic on which they are voting.

83.     The ballot language does not inform voters that the City of South Fulton will not include the FID and may or may not include the Cascade Annexation Area depending on the Supreme Court of Georgia's decision in the Cascade Annexation Appeal.

84.     The ballot language also does not apprise voters that, since the new city will not include the FID and may not include the Cascade Annexation Area, the city will not include a significant source of tax revenue and the residents of the new city will likely face higher taxes.

85.     Because the ballot language does not adequately inform voters about the topic on which they are voting, voters will be deprived of and denied substantive due process of law if the City of South Fulton Referendum goes forward.

86.     And even if voters read the full text of HB 514, it *still* is impossible for voters to know the boundaries for the proposed city until *after* the Supreme Court of Georgia renders its decision in the Cascade Annexation Appeal.

87.     The text of HB 514 does not inform voters that the FID will not be included in the new city and that the Cascade Annexation Area may or may not be included in the new city depending on the Supreme Court of Georgia's decision in the Cascade Annexation Appeal.

88.     Yet, now that the new city will not include the FID, city taxes will be immensely higher, and taxes will increase even more if, after the Referendum, the Supreme Court of Georgia issues an opinion that places the Cascade Annexation Area outside of the reach of the new City of South Fulton.

89.     Defendants are or should be aware that their conduct, in carrying out the City of South Fulton Referendum, will violate Plaintiff's and similarly situated voters' rights to substantive due process of law.

90.    Plaintiff will suffer irreparable harm if the City of South Fulton Referendum is held because his vote will be diluted and debased or treated differently from those of other voters.

91.    Plaintiff also will suffer irreparable harm if the City of South Fulton Referendum is held next month because, if the referendum passes, Plaintiff's and similarly situated voters' tax rates will be subject to a municipal tax base that was not established and, thus, was unknowable prior to their vote.

92.    Plaintiff has no adequate remedy at law.

93.    Any harm caused by postponing the City of South Fulton Referendum is far outweighed by the harm Plaintiff and similarly situated voters will suffer should the Referendum go forward in November.

94.    Enjoining the Referendum until such time as the Georgia General Assembly enacts a valid referendum-authorizing bill or, at minimum, until sometime after the Supreme Court of Georgia issues its final decision in the Cascade Annexation Appeal will serve the public interest.

95.    Moreover, HB 514, itself, expressly authorizes postponing the City of South Fulton Referendum.

**WHEREFORE**, Plaintiff asks the Court to:

(a)    Declare HB 514 unconstitutional, null, and void;

(b)  Enjoin Defendants from holding the City of South Fulton Referendum until such time as the Georgia General Assembly enacts a valid bill authorizing such a referendum, or, alternatively, enjoin Defendants from holding such a referendum until sometime after the Supreme Court of Georgia issues a final decision in the Cascade Annexation Appeal and the legal issues surrounding the FID and the 1979 LCA are settled;

(c)  Retain jurisdiction over Defendants for such period of time as may be appropriate to ensure Defendants' compliance with relief ordered by this Court;

(d)  Award Plaintiff his attorneys' fees and costs under 42 U.S.C. § 1988; and

(e)  Award any other and further relief the Court deems just and proper under the circumstances.

Respectfully submitted this 14th day of October, 2016.

HOLLAND & KNIGHT LLP

*/s/ Robert S. Highsmith Jr.*
Robert S. Highsmith Jr.
State Bar of Georgia No. 352777
Keisha O. Coleman
State Bar of Georgia No. 844720
Lindsey Sciavicco

State Bar of Georgia No. 783366
Regions Plaza, Suite 1800
1180 West Peachtree Street NW
Atlanta, Georgia 30309
Tel. 404.817.8500
robert.highsmith@hklaw.com
keisha.coleman@hklaw.com
lindsey.sciavicco@hklaw.com

## **CERTIFICATION OF EFFORTS MADE TO GIVE NOTICE**

I hereby certify that on the 14th day of October, 2016, I have notified the

Defendants, and provided them with copies, of the following:

1. **VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; and**

2. **PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND INCORPORATED MEMORANDUM OF LAW,**

by delivering same, via email, to:

Patrise M. Perkins-Hooker, Esq.
County Attorney
Office of the Fulton County Attorney
141 Pryor Street, S.W., Suite 4038
Atlanta, Georgia 30303
patrise.hooker@fultoncountyga.gov.

I further certify that I am in the process of endeavoring to obtain Defendants'

acceptance of service and, otherwise, will properly effect service upon Defendants

as required by the Federal Rules of Civil Procedure.

Respectfully submitted this 14th day of October, 2016.

HOLLAND & KNIGHT LLP

*/s/ Robert S. Highsmith Jr.*
Robert S. Highsmith Jr.
State Bar of Georgia No. 352777

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JOHN DAVIS,

               Plaintiff,

     v.

MARY CAROLE COONEY, in her official
capacity as Chairperson of the Fulton County
Board of Registration and Elections; DAVID J.
BURGE, in his official capacity as Vice-Chair of
the Fulton County Board of Registration and
Elections; and LUTHER W. BECK, RUKIYA S.
THOMAS, and STAN MATARAZZO, in their
official capacities as Members of the Fulton
County Board of Registration and Elections, and
RICHARD BARRON, in his official capacity as
Chief Administrative Officer to the Fulton
County Board of Registration and Elections

               Defendants.

Civil Action File No:

## **VERIFICATION OF JOHN DAVIS**

John Davis personally appeared before me, the undersigned officer duly

authorized by law to administer oaths, and, after being duly sworn, deposes and

states that he has reviewed the VERIFIED COMPLAINT FOR DECLARATORY

AND INJUNCTIVE RELIEF in the above-styled action and that the facts contained

therein are true and correct to the best of his knowledge, information, and belief.

This ___ day of October, 2016.

_____
JOHN DAVIS

Sworn to and subscribed before me
this  6  day of  October , 2016

_____
Notary Public

My commission expires:



_____
[NOTARY SEAL], GEORGIA

#48151847_v1