UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JOHN DAVIS,<br><br>  Plaintiff,<br><br>  v.<br><br>MARY CAROLE COONEY, in her official capacity as Chairperson of the Fulton County Board of Registration and Elections; DAVID J. BURGE, in his official capacity as Vice-Chair of the Fulton County Board of Registration and Elections; LUTHER W. BECK, RUKIYA S. THOMAS, and STAN MATARAZZO, in their official capacities as Members of the Fulton County Board of Registration and Elections; and RICHARD BARRON, in his official capacity as Chief Administrative Officer to the Fulton County Board of Registration and Elections,<br><br>  Defendants. | Civil Action File No:<br>1:16-cv-03844-ELR |

**PLAINTIFF'S REPLY IN SUPPORT OF**
**<u>MOTION FOR TEMPORARY RESTRAINING ORDER</u>**

Plaintiff John Davis submits this Reply in support of his Motion for Temporary Restraining Order (the "Motion") [Dkt. 2].

The right to vote, to be adequately informed about the topic on which one is voting, and to have one's vote counted equally are not merely "noteworthy voting

rights principles" or "boilerplate language." Def. Resp. in Opp. to Plaintiff's Mot. for TRO [Dkt. 14] ("Opp."), p. 14. Nor is Plaintiff's complaint that his and others' votes will be diluted and debased "arbitrary" or "hyperbolic." *Id.* If the City of South Fulton Referendum[1] proceeds on November 8, 2016, Plaintiff's and other voters' votes *will* be diluted and debased by the votes of individuals who cannot become residents of the new city and who will not be impacted by the election results. Plaintiff need not know how many voters will vote for and how many voters will vote against the new city. **Even one vote cast by a resident of the Fulton County Industrial District (an area that is prohibited by the Georgia Constitution from becoming a part of the new city) will entirely cancel out Plaintiff's vote**.

To afford Plaintiff the relief he seeks, Defendants need only (1) post signs at the few affected polling precincts alerting voters that the referendum is not taking place and (2) refrain from canvassing or certifying the referendum results. That is the well-established procedure under Georgia election law for avoiding cost and burden when the legal landscape surrounding an imminent election changes, and it would avoid entirely the parade of cost-and-burden horribles that Defendants raise to defend a referendum that, as currently postured, violates the U.S. Constitution.

---

[1] Capitalized terms herein have the same defined meaning as in Plaintiff's Motion.

2

I. **PLAINTIFF IS SUBSTANTIALLY LIKELY TO SUCCEED ON THE MERITS OF HIS EQUAL PROTECTION AND SUBSTANTIVE DUE PROCESS CLAIMS BECAUSE DILUTION AND DEBASEMENT OF HIS VOTE IS PRESENTLY A FACTUAL CERTAINTY.**

The boundaries of the would-be City of South Fulton have been in a state of flux and remain uncertain today. Until October 3, 2016—when the Georgia Supreme Court reversed a Fulton County Superior Court order that had invalidated a constitutional prohibition on incorporation of the FID—the FID was poised to become part of the new city if the Referendum passes. But the effect of the October 3 opinion is that the 1979 LCA currently remains valid and constitutionally bars any incorporation of the FID. Individuals who live within the FID cannot possibly become part of the new city today. Similarly, individuals who petitioned for annexation of the Cascade Annexation Area into the City of Atlanta also <u>may</u> not become part of the new city depending on what the Georgia Supreme Court ultimately decides in the pending Cascade Annexation Appeal. Yet HB 514 requires that individuals who live within the FID or the Cascade Annexation Area be allowed to vote on whether to form a new city of which they cannot—or in the case of the Cascade Annexation Area residents, may not—become residents. Defendants' brief ignores this fact and argues instead that Plaintiff (1) waited too long to file his claim,

(2) has no proof of "intentional discrimination" or "disproportionate impact," and (3) has no proof of how voters will vote in the Referendum. Opp., pp. 10-16.

First, Plaintiff did not sit on his rights. Only on October 3, the week before Plaintiff brought this action, did the Georgia Supreme Court's reversal in the FID Litigation render the FID constitutionally ineligible to be incorporated into the new city. And Cascade Annexation Area residents were residents of the City of Atlanta until September 20, when the Georgia Supreme Court issued an order that lifted *sua sponte* the supersedeas that was keeping them in the City of Atlanta and out of the would-be City of South Fulton. *Mays, et al. v. City of Atlanta*, S17M0239 (Ga. Sept. 20, 2016). Had the Georgia Supreme Court upheld the Superior Court of Fulton County's order invalidating the 1979 LCA that prohibits incorporation of the FID, the FID would have been *included* in the new city and, thus, allowing residents of the FID to vote on cityhood would not have served to dilute Plaintiff's and others' votes. Plaintiff brought this action and moved for a temporary restraining order on October 14, the week following the Georgia Supreme Court's October 3 order. The timing of Plaintiff's suit is solely the result of very recent and unexpected court decisions that fundamentally changed the legal landscape of the referendum, not a "decision not to pursue his claim until after voting on the referendum already ha[d] begun." Opp., p. 12.

Defendants' suggestion that Plaintiff somehow should have brought suit in March 2015—one year before HB 514 was even enacted—is meritless. And the suggestion that Plaintiff should have sued as soon as HB 514 was signed into law in April 2016 ignores that neither Plaintiff nor his counsel could have known that voters in the FID <u>would</u> and voters in the Cascade Annexation area <u>could</u> debase and dilute Plaintiffs' and others' votes as a result of the Georgia Supreme Court's orders of September 20 and October 3 of this year.

Second, Plaintiff need not prove intentional discrimination or disproportionate impact (Opp., pp. 13-14) or that any individual or group of FID or Cascade Annexation Area voters has more voting power than other South Fulton residents (Opp., p. 15), as Defendants suggest. As to the purported requirement to prove intentional discrimination, "federal relief is warranted whenever broad-gauged unfairness permeates the election process, even if it derives from apparently neutral action," and an action for violation of a constitutional right need not be predicated on a showing of willful conduct." *Duncan v. Poythress*, 515 F. Supp. 327, 339 (N.D. Ga. 1981), *aff'd*, 657 F.2d 691 (5th Cir. 1981).

As to the purported requirement to show disproportionate impact, Plaintiff bases his equal protection claim on the fact that voters who will not live in the would-be City of South Fulton are nonetheless allowed to vote on it, thereby diluting and

debasing Plaintiff's and other similarly situated voters' votes. However, Defendants cite various discrimination cases for the notion that Plaintiff must "prove that he and other residents of the proposed City of South Fulton were singled out for differential treatment, as compared to residents of the FID, the Cascade Annexation Area or some other geographical group." Opp. p. 14. And for the proposition that Plaintiff must prove that an individual or group of FID or Cascade Annexation Area voters has more voting power than any other South Fulton resident, Defendants cite a case that analyzes whether the votes of two subsets of voters—<u>both properly within the voting jurisdiction</u>—can be weighted differently. *See* Opp., pp. 15-16, citing *Town of Lockport, NY v. Citizens for Comm. Action at the Local Level, Inc.*, 430 U.S. 259 (1977).

Defendants conflate several different concepts of constitutional law. Plaintiff does not allege that he is part of a protected class that is being "singled out" as compared to residents of the FID or Cascade Annexation Area. Nor does Plaintiff allege that FID or Cascade Annexation Area residents' votes are being weighted more than the votes of residents living outside those areas. Plaintiff's claim is far simpler: non-residents of the new city should not be allowed to vote in the Referendum at all. FID residents will not, and Cascade Annexation Area residents may not, live in the would-be new city. The referendum ballot box should not be

stuffed with their votes. That incorporation of the proposed city "arguably could impact residents of FID and Cascade who live in or around the proposed city" does not mean "their vote should be given equal weight as well." Opp., pp. 15-16. Under Defendants' logic, residents of, say, the cities of Chattahoochee Hills and Fairburn, both of which are "around" the proposed city, also would be "impacted" and could be allowed to vote in the Referendum.

Third, Defendants contend, with no citation to authority, that Plaintiff must demonstrate "that voters within the FID and the Cascade Annexation Area will vote contrary to the interests of Plaintiff and other South Fulton voters" (Opp., p. 15). But Plaintiff is not required to prove how voters will vote in the Referendum. Like the Plaintiffs in *Larios v. Cox*, 300 F. Supp. 2d 1320, 1347 (N.D. Ga. 2004), who demonstrated the dilution and debasement of their votes by demonstrating the disparate number of voters in the unconstitutional legislative districts in that case, Plaintiff here only need show—as he uncontrovertibly has—that the City of South Fulton ballot box will be stuffed with the votes of non-residents. And again, Defendants misapprehend how HB 514 violates the Constitution. Plaintiff's claim is not about a comparison of the voting power of different but eligible groups of voters. Here, 100 percent of Plaintiff's vote will be canceled out if even **one voter** who will

not live in the proposed city is allowed to vote in the Referendum and casts a vote contrary to Plaintiff's, and will be diluted and debased regardless.

## II. PLAINTIFF IS ALSO SUBSTANTIALLY LIKELY TO SUCCEED ON HIS SUBSTANTIVE DUE PROCESS CLAIM BECAUSE DEFENDANTS DO NOT DISPUTE THAT VOTERS ARE NOT ADEQUATELY INFORMED ABOUT THE REFERENDUM TOPIC.

Plaintiff asserts a second claim and basis for a temporary restraining order: that voters will be forced to vote on incorporation of a city without knowing the territorial makeup and tax base of the potential city. *See* Compl. ¶¶ 63-88. Defendants do not address Plaintiff's second claim or dispute that neither the ballot language nor the text of HB 514 adequately informs voters about the topic on which they are voting. *See, e.g., United States v. Barber*, No. 1:13-CR-343-WBH, 2015 WL 5316793, at *10 (N.D. Ga. Sept. 10, 2015) (holding that government's failure to respond to an argument operated as a waiver of that issue).

## III. PLAINTIFF HAS SATISFIED THE IRREPARABLE HARM ELEMENT.

Because this is a voting rights case, Plaintiff is not required to make the usual showing of irreparable injury, "rather, such injury is presumed by law." *Harris v. Graddick*, 593 F. Supp. 128, 135 (M.D. Ala. 1984); *Bethea v. Deal*, CV216-140, Order at Dkt. 16, pp. 5-6 (S.D. Ga. Oct. 19, 2016) ("Because this case involves the

right to vote, the Court assumes that Plaintiffs will suffer an irreparable injury should they be denied injunctive relief.").

Defendants make no attempt to distinguish *Harris* or any of the other cases Plaintiff cites in his Motion (*see* Mot., pp. 19-20 ) and instead contend (1) that Plaintiff has not established a likelihood of success on the merits and therefore is not entitled to a presumption of harm (Opp., p. 16), and (2) that Plaintiff cannot prove irreparable injury because he could seek to undo or invalidate the election after it occurs (Opp., p. 17).

Defendants cite *Overstreet v. Lexington-Fayette Urban Cnty. Gov.*, 305 F.3d 566, 578 (6th Cir. 2002), in support of their first no-irreparable-harm argument and, in doing so, wrench one sentence from that opinion out of its context. The county worker plaintiff in *Overstreet* claimed that, in being required to disclose real-property interests on a county form, he was deprived of his right to privacy. *Id.* at 569-70. The *Overstreet* court did find unavailing plaintiff's argument that he was entitled to a presumption of irreparable harm simply because he alleged a constitutional violation, but that was because the alleged irreparable harm was loss of income that the plaintiff could recover in back pay if he ultimately won on the merits. *Id.* at 579. Plaintiff's claim here is a voting rights claim. Unlike in *Overstreet* but like the cases Plaintiff cites that Defendants did not address, the harm suffered

when one's vote is diluted and debased cannot be cured with monetary compensation.

Defendants' second no-irreparable-harm argument—that Plaintiff cannot show irreparable harm because the results of the election would be voided if this Court subsequently finds HB 514 and the Referendum unconstitutional—is neither practical nor supported by the lone opinion Defendants cite. On one hand, Defendants complain that the costs already incurred in connection with the Referendum and the administrative burdens of an injunction tip the scale of hardship in Defendants' favor. On the other, Defendants actually suggest proceeding with a Referendum that they admit ultimately may be rendered void by this Court. Maintaining the status quo, **particularly where HB 514 expressly authorizes postponing the Referendum**, cannot be more costly, burdensome, and adverse to the public interest than proceeding with the Referendum, incorporation of a new city, electing officials for the new city, and so forth, only to later render all of it void.

### IV. HB 514 ITSELF PROVIDES FOR POSTPONEMENT, THE BALANCE OF HARDSHIPS OTHERWISE WEIGH IN PLAINTIFF'S FAVOR, AND POSTPONEMENT IS IN THE PUBLIC INTEREST.

Defendants wholly ignore **that HB 514 itself expressly provides for postponing the Referendum**. *See* H.B. 514, § 7.17 ("If it is necessary to delay any action called for in this Act for providential cause or any other reason . . . . If it is

not possible to hold the referendum election on the date specified . . . then such referendum shall be held as soon thereafter as is reasonably practicable . . . ."). Further, Defendants are not required to proceed with an unconstitutional election merely because they have already received some absentee and early-voting ballots. *See, e.g., Brodie v. Champion*, 281 Ga. 105, 107 (2006) (holding voters were not disenfranchised when their write-in votes were not counted because the write-in candidates were not eligible to serve even though those voters were not given notice that their votes would not be counted).

Moreover, Defendants need not undertake the more burdensome and draconian steps they describe in their brief (altering precinct boundaries or reprogramming electronic voting equipment or otherwise removing the question from the ballots—Opp., pp. 7-8) when a simpler solution will suffice. This Court can and should order Defendants to easily solve this problem by (1) posting signs at the South Fulton precincts—there are only a few—informing voters that the referendum is not being conducted at this time and (2) not canvassing or certifying the results of any votes cast. Such notice and voidance is the well-established procedure in Georgia election law for avoiding cost and burden when the legal landscape around an imminent election changes. *See* O.C.G.A. § 21-2-5(c) and 21-2-6(c) (providing that if a candidate for public office is found unqualified after

ballots have been printed, "a prominent notice shall be placed at each affected polling place advising voters of the disqualification of the candidate and all votes cast for such candidate shall be void and shall not be counted"); *see also* O.C.G.A. § 21-5-134 (providing for three scenarios where "[p]rominent notices shall be posted in all polling places in which the name of the withdrawn candidate appears on the ballot stating that such candidate has withdrawn and that all votes cast for such withdrawn candidate shall be void and shall not be counted").

Regardless of the form of relief this Court orders, however, courts have held that administrative costs and burdens like those Defendants identify (*see* Opp., pp. 17-18) "cannot begin to compare with the further subjection of [Plaintiff's] denial of his right, to full and equal political participation." *Dillard*, 640 F. Supp. at 1363. Even where costs incurred by the state and citizens are severe, "the restoration of plaintiff's right to vote outweighs the public expenditure involved." *Duncan*, 515 F. Supp. at 342. Because violations of the right to vote cause the "public as a whole [to] suffer[] injury," *Harris*, 593 F. Supp. at 135, postponing the Referendum until the Georgia General Assembly enacts a valid bill or until the boundaries are settled "is without question in the public interest." *Charles H. Wesley Educ. Found. v. Cox*, 408 F.3d 1349, 1355 (11th Cir. 2005).

WHEREFORE, for the foregoing reasons and the reasons set forth in Plaintiff's Motion, Plaintiff respectfully requests that the Court grant the relief requested herein and in Plaintiff's Verified Complaint.

Respectfully submitted this 25th day of October, 2016.

                                 HOLLAND & KNIGHT LLP

                                 */s/ Robert S. Highsmith Jr.*
                                 Robert S. Highsmith Jr.
                                 State Bar of Georgia No. 352777
                                 Keisha O. Coleman
                                 State Bar of Georgia No. 844720
                                 Lindsey Sciavicco
                                 State Bar of Georgia No. 783366
                                 Regions Plaza, Suite 1800
                                 1180 West Peachtree Street NW
                                 Atlanta, Georgia 30309
                                 Tel. 404.817.8500
                                 robert.highsmith@hklaw.com
                                 keisha.coleman@hklaw.com
                                 lindsey.sciavicco@hklaw.com

## CERTIFICATION OF COUNSEL

Pursuant to Local Rule 7.1D, the undersigned counsel for Defendant files this Certification of Counsel stating that the foregoing document was prepared in Times New Roman, 14 point font, in accordance with Local Rule 5.1B.

HOLLAND & KNIGHT LLP

*/s/ Robert S. Highsmith Jr.*
Robert S. Highsmith Jr.
State Bar of Georgia No. 352777

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

This 25th day of October, 2016.

HOLLAND & KNIGHT LLP

*/s/ Robert S. Highsmith Jr.*
Robert S. Highsmith Jr.
State Bar of Georgia No. 352777

#48426724_v2