# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| JOHN DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION FILE |
| v. | ) |
| | ) NO: 1:16-CV-03844-ELR |
| MARY CAROLE CONNEY, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

## BRIEF OF AMICUS CURIAE IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

Amicus Curiae Robert Ammons, Emelyn Mays and Evangeline Watkins (collectively, "Amici"), who are residents of the Cascade Area Annexations and eligible to vote for or against the incorporation of the potential City of South Fulton, file this Memorandum of Law In Opposition to Plaintiff John Davis's (Plaintiff's) Motion for Temporary Restraining Order ("Plaintiff's Motion").[1] With this Memorandum, the Amici show that the Plaintiff's Motion should be denied because he is unlikely to succeed on the merits.

---

[1] The Amici adopt the abbreviations used in Plaintiff's Motion.

# INTRODUCTION

Plaintiff articulates a creative but fundamentally flawed legal theory, namely that the United States Constitution limits voting for or against incorporating a new city to persons who will live in the potential city. Put differently, Plaintiff wrongly argues that expanding the franchise demeans the franchise. Federal law does not support such an interpretation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

Plaintiff also fails to articulate how the challenged ballot question is deceptive or "so misleading that voters cannot recognize the subject of the amendment at issue." Burton v. Georgia, 953 F.2d 1266, 1269 (11th Cir. 1992) (emphasis added). Instead, he essentially argues that the General Assembly could have included more language. This is not the standard the Eleventh Circuit uses when considering whether to stay or invalidate an election. Id. Consequently, Plaintiff cannot show a likelihood of success on the merits, and Plaintiff's Motion should be denied.

# ARGUMENT AND CITATION TO AUTHORITY

Pursuant to Eleventh Circuit precedent, Plaintiff faces a stout burden: "Only in extraordinary circumstances will a challenge to a state election rise to the level of a constitutional deprivation." Curry v. Baker, 802 F.2d 1302, 1314 (11th Cir.

1986). "The power of the federal courts to throw out the results of a state election is '[d]rastic, if not staggering … and therefore a form of relief to be guardedly exercised.'" Burton, 953 F.2d at 1268 (citing Bell v. Southwell, 376 F.2d 659, 662 (5th Cir. 1967)). Plaintiff's flawed and unrecognized constitutional theory fails to meet that hefty burden.

## Standard of Review

As shown by Defendants' Memorandum in Opposition to Plaintiff's Motion (Dkt. No. 14), Plaintiff fails to show any of the four factors required to obtain a temporary restraining order: (1) substantial likelihood of success on the merits; (2) substantial threat to irreparable injury; (3) the injury to the Plaintiff outweighs the injury to the Defendants; and (4) the injunction does not disserve the public interest. KH Outdoor, LLC v. City of Trussville, 458 F.3d 1261, 1268 (11th Cir. 2006). Amici submit this Memorandum to address the first factor and show why Plaintiff's inability to show a "substantial likelihood of success on the merits" warrants denying Plaintiff's Motion. See Ingram-Singletary v. Citimortgage, Inc., 1:14-CV-01680-ELR, 2015 WL 11256660, at *2 (N.D. Ga. May 21, 2015).

### 1. **<u>Plaintiff Has Not Shown A Substantial Likelihood Of Success On The Merits Of His Equal Protection Claim.</u>**

Plaintiff alleges allowing the vote on incorporation to continue violates his right to Equal Protection under the Fourteenth Amendment to the United States Constitution. (Compl. ¶¶ 63-77.) In addition to the reasons set forth in the Defendants' response, Plaintiff's argument fails for three key reasons. First, Plaintiff relies on a flawed premise that claims that the Constitution mandates the exclusion of eligible voters based on an appeal of an annexation dispute or their residence in areas that, according to Plaintiff, will not be part of the new city. Second, the allegations do not state a recognized claim under the Equal Protection Clause. Third, Plaintiff's theory would create perverse incentives to challenge every referendum – from statewide constitutional amendments to local bond referenda – and claim that the litigation provides a basis to stay an election.

Plaintiff's authority sets forth the elements of an Equal Protection Clause claim involving allegations of vote dilution: "[1] 'the character of the classification in question; [2] the individual interests affected by the classification; and [3] the governmental interests asserted in support of the classification.'" <u>Duncan v. Poythress</u>, 515 F. Supp. 327 (N.D. Ga. 1981) (addressing statewide judicial elections) (citing <u>Dunn v. Blumstein</u>, 405 U.S. 330, 335 (1972)). Plaintiff is

unable to show a substantial likelihood on the merits for these elements, because the Supreme Court has approved of classifying voters based on whether they live in incorporated or unincorporated areas, and referenda are different from the election of representative leaders.

### A.     The General Assembly Could Lawfully Expand The Vote To The FID And Cascade Areas.

The most basic reason to deny Plaintiff's Motion for Temporary Restraining Order ("Plaintiff's Motion") is that it requires this Court to accept two erroneous foundational arguments: (1) that Atlanta's failed attempt to annex the Cascade Area Annexations will be reversed by the Supreme Court of Georgia; and (2) that only those persons subject to incorporation have an interest in incorporation. The first is highly conjectural, and the second has never been adopted by a federal or state court.

On the issue of the Cascade Area Annexations, the Plaintiff's theory requires this Court to <u>presume</u> that the referendum on the City of South Fulton passes, <u>presume</u> that the Supreme Court does not consider the issue mooted by a successful referendum, and then <u>presume</u> that the Supreme Court of Georgia will reverse each of the three reasons that the Fulton County Superior Court invalidated the annexations. See <u>Mays et al. v. City of Atlanta</u>, 2016CV77840 (Super. Ct.

Fulton County, Sept. 8, 2016). This speculative and tenuous foundation does not provide a sufficient basis to stop a state election through a federal judicial order.

But accepting, *arguendo*, Plaintiff's presumptions on the Cascade Area Annexations and Plaintiff's argument on the legal status of the FID, does not save Plaintiff's Motion. No court has ever held the Equal Protection Clause limits voting on incorporation referenda to persons who might live in the proposed city. In fact, federal law holds that the General Assembly could have reasonably and rationally decided to <u>expand</u> the vote beyond potential municipal borders so that all those persons affected would have an opportunity to weigh in on the decision.

The Supreme Court of the United States identified this concern in <u>Holt Civic Club v. City of Tuscaloosa</u>, 439 U.S. 60, 69 (1978). There, the Court listed several municipal issues, including the "granting of building permits for high rise apartments, industrial plants … law enforcement" tax changes and condemnation as impacting surrounding, unincorporated areas. <u>Id.</u> "Indeed, the indirect extraterritorial effects of many purely internal municipal actions could conceivably have a heavier impact on surrounding environs than the direct regulation." <u>Id.</u>

The Supreme Court also upheld as constitutional a New York statute that required county charter changes to be approved by majorities of <u>both</u> individuals living in cities and individuals living in the unincorporated area of the county.

Town of Lockport, N.Y. v. Citizens for Community Action At the Local Level, Inc., 430 U.S. 259, 261 (1977) ("Lockport").  In Lockport, a group of unincorporated county voters challenged the New York statute based on the Equal Protection Clause.  They argued that their votes were diluted because a majority of city residents and a majority of county residents had to approve the county charter amendments, even though fewer people lived in the incorporated areas of the county.  Id.

The Court rejected the challenge and held that the New York legislature could decide that city inhabitants and unincorporated county residents may have "separate and potentially opposing interests … based on the perception that the real and long-term impact of restructuring a local government is felt quite differently by the county constituent units that in a sense compete to provide smaller government services."  Id. at 272.  Consequently, and "given the presumption of constitutionality to which every duly enacted state and federal law is entitled," the Court held that the New York law did not violate the Equal Protection Clause.

The same is true in this case.  The General Assembly could have decided that those persons residing in the Fulton Industrial District (the "FID") would be impacted by the incorporation of the City of South Fulton, because, if the referendum passes, residents of the FID would be the only persons residing in

-7-

unincorporated Fulton County.  Far from being constitutionally prohibited from allowing those persons to vote on their future, the General Assembly's inclusive decision to grant FID voters the franchise violates the constitutional rights of no one.  It is, instead, akin to the New York legislature's recognition of the impacts county or city changes can have on residents of the other.  430 U.S. at 272-73.

### B. The Principle Of One Person, One Vote Is Inapplicable.

Plaintiff cited no authority to support his contention that, absent enabling legislation saying otherwise, persons have a right to vote on the incorporation of a new city.  The Georgia Code provides none; indeed, Georgia law authorizes the General Assembly to create municipalities without any referendum at all.  See O.C.G.A. §§ 36-31-1 through 36-31-12.

Plaintiff's federal authority does not establish a right to vote on the issue of incorporation either.  It only addresses elections of representative leaders.  See Hadley v. Junior College Dist. of Metro. Kansas City, Mo., 397 U.S. 50, 51 (1970) ("This case involves the extent to which the Fourteenth Amendment and the 'one man, one vote' principle apply in the election of local governmental officials."); Reynolds v. Sims, 377 U.S. 533, 537 (1964) (addressing apportionment of the Alabama Legislature); Gray v. Sanders, 372 U.S. 368 (1963) (addressing elections to Georgia General Assembly); Crumly v. Cobb County Bd. of Elections and Voter

Registration, 892 F. Supp. 2d 1333, 1335 (N.D. Ga. 2012) ("This case involves the reapportionment of the electoral commission districts for the voters of Cobb County, Georgia.") Larios v. Cox, 300 F.Supp. 2d 1320, 1321 (N.D. Ga. 2004) (addressing "congressional and state legislative reapportionment plans"); Duncan v. Poythress, 515 F. Supp. 327 (N.D. Ga. 1981) (addressing statewide judicial elections).[2]  The ongoing vote does not involve questions of who will serve on the City of South Fulton City Council, and Plaintiff's authority, therefore, is irrelevant to the issue before this Court.

Thus, strict scrutiny would not apply, and the only question before this Court is whether the General Assembly reasonably allowed all persons in unincorporated Fulton County to vote on the issue of incorporation.  As shown above, the legislation clearly satisfies that lower threshold.

Alternatively, if this Court decided that the Constitution of the United States establishes a right to vote in a referendum independent from the referendum itself

---

[2] The only exception is Black v. McGuffage, 209 F. Supp. 2d 889, 900 (N.D. Ill. 2002), and it is easily distinguishable.  That case involved a challenge to the means of voting, specifically the use of punch cards.  Id.  When it examined the Equal Protection Clause claim, the court decided that, because Illinois granted the right to vote in elections to all citizens, the votes had to be made on equal terms.  Id. at 898.  Here, the General Assembly decided that all persons in unincorporated Fulton County could vote on the incorporation measure, and it did not make the same distinction at issue in Black.

(e.g., from some source other than House Bill 514's text), as recognized by the Court in Lockport, constitutional concerns that arise in referenda are different from those involving the election of political leaders.  Specifically, Plaintiff's authority about electing leaders does not apply to litigation about referenda, and the Lockport decision said that, in the context of disputes over referenda, "equal protection principles applicable in gauging the fairness of an election involving the choice of legislative representatives are of limited relevance."  430 U.S. at 266.  As held by the Court, in a referendum, "the expression of voter will is direct, and there is no need to assure that the voters' views will be adequately represented through their representatives in the legislature … the referendum puts one discrete issue to the voters."  Id.

This is not the same as the Reynolds Court's reasoning on "inalienable right to full and effective participation in the political process of his State's legislative bodies."  377 U.S. at 1382-83 (emphasis added).  Thus, the General Assembly's interest in allowing all residents of currently unincorporated Fulton County to vote cannot be held to be illegitimate in the light of the safeguards of a referendum.

      **C.**    **Plaintiff's Theory Incents Legal Gamesmanship.**

Another significant flaw with Plaintiff's legal theory is that it would allow any person disappointed with legislative and state judicial losses to stop a state

election based only on that person's decision to appeal the adverse judicial ruling. Here, Plaintiff failed to convince state legislators to limit eligible voters to those who – through annexation (Cascade Area Annexations) or litigation (FID) – may not ultimately be part of the new municipality.  The City of Atlanta lost its litigation to stop voting in the Cascade Area Annexations and the FID.  And, Plaintiff now cites the appeal of Atlanta's losses as a basis to delay a referendum vote.

Because the "'drastic'" remedy of interfering with a state election should be used sparingly, it should require more than having an allied party lose in court and simply appeal those decisions.  Burton, 953 F.2d at 1268.  After all, disappointed advocates like the Plaintiff are not without any remedy; states' "political process[es] afford[] another avenue for redress of grievances, as voters may demonstrate at the polls their displeasure with those officials responsible for election irregularities."  Id.

In sum, all residents living in unincorporated Fulton County (which is limited to the southern portions of Fulton County) have an equal opportunity to participate in the election, and the General Assembly permissibly chose to value the votes of all the residents.  In other words, there is no vote dilution, because all votes should be counted.  Nothing in Plaintiff's authority suggests that the

legislatively-established right to vote on incorporation must be limited to those persons whom Atlanta did not try to annex or that do not reside in the FID.

## 2. Plaintiff Has Not Shown A Substantial Likelihood Of Success On His Substantive Due Process Claim.

Plaintiff's second count is for an alleged violation of his right to substantive due process. More specifically, Plaintiff raises the same vote dilution argument, and he claims that the ballot question (on which residents are already voting) is misleading. (Compl. ¶¶ 78-95.) The first contention is addressed above, and the second argument would likely not succeed on the merits.

To prevail on his substantive due process claim on ballot language, Plaintiff must show that "the state's choice of ballot language so upset the evenhandedness of the referendum that it worked a 'patent and fundamental unfairness' on the voters … only when the ballot language is so misleading that voters cannot recognize the subject of the amendment at issue." Burton, 953 F.2d at 1269 (citation omitted). This Court must uphold the ballot question unless Plaintiff can demonstrate that the "voter [will] be deceived about what amendment is at issue." Id. See also Nat'l Audubon Soc., Inc. v. Davis, 307 F.3d 835, 858-59 (9th Cir. 2002) (adopting Burton test); Goldrush II v. City of Marietta, 482 S.E.2d 347, 352 (Ga. 1997) ("This Court … [conducts] only a minimal review of ballot language if

the state followed all of the constitutionally and statutorily required procedures for amending the constitution…" (citation omitted) (ellipses and brackets in original)). As held by the Ninth Circuit, ballot questions should be upheld if they are "'not completely inaccurate.'" Caruso v. Yamhill County, 422 F.3d 848, 863 (9th Cir. 2005) (relying on National Audubon Society, 307 F.3d at 858-59). Plaintiff cannot make this required showing.

First, there is no allegation that voters do not know they are voting on whether to incorporate the proposed City of South Fulton. Nor can there be. The ballot question is succinct, objective, and clear: "Shall the Act incorporating the City of South Fulton in Fulton County and granting the homestead exemptions described therein be approved?" Plaintiff has not even alleged that voters do not know what this means, and Plaintiff has not identified any other reasonable interpretation of the ballot question.

Plaintiff instead argues that, based on failed annexations and the current status of the FID, voters do not know the full impact of their vote. Concerns about voters' informed opinions can always be a concern on any ballot, and the Eleventh Circuit has rejected that argument as a basis to strike a ballot question as affirmatively misleading. In Burton, the court held that the "voters must inspect the text of the amendment itself to determine, for themselves, the legal effect of its

passage." 953 F.2d at 1270 (emphasis added). The General Assembly was not obligated to foresee every potential obstacle that the City of Atlanta would throw in the path of those supporting a vote on incorporation, and Plaintiff's argument to the contrary fails.

Third, Plaintiff's tax policy argument against the proposed City of South Fulton is just that: a policy argument that can be used to advocate against the proposal to voters. It does not, however, establish a reason to deem the ballot question defective. On this point, Burton is also instructive. It held that a ballot question on extending the State's sovereign immunity laws was not required to "explain the current state of Georgia immunity law and the changes that [the amendment] would likely bring about if adopted." Id. at 1270.

Plaintiff's authority on this point is unavailing. It cites Burton, which forecloses Plaintiff's argument. It also cites two Georgia cases dealing with whether state legislators knew, based on a bill's caption, the full subject matter of the legislation they voted for or against. See Adams v. City of Corneilia, 58 S.E.2d 398, 400 (Ga. 1950); Bray v. City of East Point, 46 S.E.2d 257, 258 (Ga. 1948). Questions about the legislative votes for and against House Bill 514 are not relevant to the ballot question at issue. Finally, neither Adams nor Bray were decided on the grounds of federal substantive due process; the Georgia courts ruled

instead on the question of whether the legislation's title accurately reflected the legislation's substantive text.  Adams, 58 S.E.2d at 400 (addressing alleged violation of "art. 3, sec. 7, par. 8 of the Constitution of the State of Georgia"); Bray, 46 S.E.2d at 258 (same).

Plaintiff may have preferred a lengthier ballot question that identified not only the proposed boundaries of the City of South Fulton but also warned voters that the City of Atlanta would oppose the municipality in the legislature and in court.  The Constitution, however, does not adopt Plaintiff's contention.  Consequently, he cannot show a substantial likelihood of success on the merits of his substantive due process claim.

## **CONCLUSION**

Voters are already deciding whether or not to incorporate the City of South Fulton.  Stopping the election now – based on the City of Atlanta's legal strategy – is not only unsupported by the United States Constitution, it is actually precluded from binding legal precedent that (1) recognizes distinctions between a referendum and the election of political leaders and (2) establishes a minimal threshold when considering ballot questions.  Plaintiff will be unable, therefore, to show a likelihood of success on the merits and is not entitled to a temporary restraining order.

For these reasons, the Amici request that this Court DENY the Plaintiff's Motion for Temporary Restraining Order to enjoin the November 8, 2016 referendum.

Respectfully submitted this 26th day of October, 2016.

        Josh Belinfante
        Georgia Bar No. 047399
        Kimberly K. Anderson
        Georgia Bar No. 602807
        ROBBINS ROSS ALLOY BELINFANTE LITTLEFIELD LLC
        999 Peachtree Street, N.E. Suite 1120
        Atlanta, GA 30309
        Telephone: (678) 701-9381
        Facsimile: (404) 856-3250
        jbelinfante@robbinsfirm.com
        kanderson@robbinsfirm.com

        *Attorneys for Amici Robert Ammons,*
        *Emelyn Mays and Evangeline Watkins*

## **L.R. 7.1(D) CERTIFICATION**

I certify that this brief has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C). Specifically, this brief has been prepared using 14-pt Times New Roman Font.

          /s/ *Josh Belinfante*
          Josh Belinfante
          Georgia Bar No. 047399

# CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the within and foregoing **BRIEF OF AMICUS CURIAE IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER** with the Clerk of Court using the CM/ECF system, which automatically sent counsel of record e-mail notification of such filing.

This 26th day of October 2016.

                                                 */s/Josh Belinfante*
                                                 Josh Belinfante