# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| JOHN DAVIS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | 1:16-CV-03844-ELR |
| | * | |
| MARY CAROLE COONEY, in her official capacity as Chairperson of the Fulton County Board of Registration and Elections; DAVID J. BURGE, in his official capacity as Vice-Chair of the Fulton County Board of Registration and Elections; LUTHER W. BECK; RUKIYA S. THOMAS; and STAN MATARAZZO, in their official capacities as Members of the Fulton County Board of Registration and Elections; and RICHARD BARRON, in his official capacity as Chief Administrative Officer to the Fulton County Board of Registration and Elections, | * * * * * * * * * * * * * * * * * | |
| Defendants. | * | |

## ORDER

On October 14, 2016, Plaintiff John Davis filed suit against the following members and officers of the Fulton County Board of Registration and Elections: (1) Mary Carole Cooney; (2) David J. Burge; (3) Luther W. Beck; (4) Rukiya S.

Thomas; (5) Stan Matarazzo; and (6) Richard Barron. Plaintiff asserts two causes of action: (1) violation of equal protection of the law and (2) violation of substantive due process of law. This matter comes before the Court on Plaintiff's Motion for Temporary Restraining Order ("TRO"). (Doc. No. 2.) During a hearing held October 27, 2016, the Court orally denied Plaintiff's Motion for Temporary Restraining Order. This order further explains and memorializes the Court's reasoning.

## I. Background

The relief Plaintiff ultimately seeks in this action is a declaration that Georgia House Bill 514 ("HB 514") is unconstitutional and an injunction halting the November 2016 referendum ("the Referendum") on the incorporation of the proposed City of South Fulton.

It is well established in this Circuit that a TRO is an "extraordinary and drastic remedy[.]" Zardui-Quintana v. Richard, 768 F.2d 1213, 1216 (11th Cir. 1985). A plaintiff seeking a TRO must demonstrate that: (1) there is a substantial likelihood of success on the merits; (2) he will suffer irreparable injury if relief is not granted; (3) the threatened injury outweighs any harm the requested relief would inflict on the non-moving party; and (4) entry of relief would serve the public interest. E.g., KH Outdoor, LLC v. City of Trussville, 458 F.3d 1261, 1268 (11th Cir. 2006). The decision as to whether a plaintiff has carried this burden "is

within the sound discretion of the district court and will not be disturbed absent a clear abuse of discretion." Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc., 303 F.3d 1242, 1246 (11th Cir. 2002) (quoting Palmer v. Braun, 287 F.3d 1325, 1329 (11th Cir. 2002)) (internal quotation marks omitted). Failure to establish any one of the four elements results in the denial of a TRO. Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205, 1210 (11th Cir. 2003).

## II. Analysis

The Court opens its discussion with a brief summary of the facts giving rise to this dispute and the Referendum. From there, the Court addresses the merits of Plaintiff's TRO request, focusing specifically on the likelihood of success on the merits and irreparable harm.

*A.    HB 514, the 1979 LCA, and the Cascade Area Annexations*

On April 26, 2016, Governor Nathan Deal signed HB 514 into law, which authorizes a November 2016 referendum for residents of unincorporated Fulton County to vote on the creation of a City of South Fulton. Because of ongoing litigation in two cases, Plaintiff alleges that his and others' votes will be diluted and that the ballot language is ambiguous because it does not adequately inform voters of the litigation. The two cases pertain to (1) a 1979 Local Constitutional

3

Amendment ("1979 LCA") and the Fulton County Industrial District ("FID") and (2) the Cascade Area Annexations.

The 1979 LCA established the FID and prohibits the annexation or incorporation of any part of the FID. However, in March 2015, the City of Atlanta sued Fulton County for a declaration that the 1979 LCA is invalid and void. On August 31, 2015, the Superior Court of Fulton County entered an Order declaring the 1979 LCA void. Based on the Superior Court's Order, the FID could become part of the proposed City of South Fulton. Fulton County appealed, and on October 3, 2016, the Georgia Supreme Court reversed the Superior Court,[1] leaving the 1979 LCA in force. In light of the Georgia Supreme Court's decision, the FID cannot be annexed or incorporated. As previously noted, HB 514 authorizes a vote on whether the City of South Fulton should exist. As the parties stipulate, however, Defendants intend to count the votes of those residing in the FID, despite the fact that the FID cannot be incorporated into the City of South Fulton at this time. (See Doc. No. 22 at ¶ 10.)

---

[1] The Georgia Supreme Court based its holding on justiciability grounds. Fulton Cty. v. City of Atlanta, No. S16A0689, 2016 WL 5758991, at *4 (Ga. Oct. 3, 2016). It was not disputed that the City of Atlanta had not yet attempted to annex any land in the FID. Id. Instead, the City of Atlanta sought to test the validity of the 1979 LCA prior to enacting any annexation ordinance. Id. at *3. The Georgia Supreme Court held that the City of Atlanta's challenge was akin to a request for an advisory opinion, which courts may not render. Id. at *2–4. Accordingly, the Court held that the Superior Court of Fulton County should have dismissed the suit prior to reaching the merits. Id. at *4.

After the passage of HB 514, certain residents in the Cascade-area neighborhood of unincorporated Fulton County petitioned for annexation into the City of Atlanta, which was approved in June 2016 and signed by Mayor Kasim Reed that same month. In July 2016, a group of residents sued the City of Atlanta challenging the Cascade Area Annexations, and on September 8, 2016, the Superior Court of Fulton County held the annexations to be invalid. The City of Atlanta appealed that ruling to the Georgia Supreme Court. On September 20, 2016, the Supreme Court of Georgia denied a motion to expedite the appeal. Based on that Order, the appeal remains pending as of the date of this order. At least for the time being, then, residents of the Cascade Annexation are still residents of unincorporated Fulton County, and therefore can vote on the Referendum.

B.   *Substantial Likelihood of Success on the Merits*

Plaintiff raises two claims: violation of equal protection and violation of substantive due process.

i.   Equal Protection

Plaintiff first argues that his and other "similarly situated unincorporated Fulton County voters' rights will be diluted and debased if the Referendum takes place . . . because House Bill 514 requires Defendants to count the votes of persons who will not and others who may not even reside in the proposed new city." (Doc.

5

No. 2 at 2–3 (emphasis omitted).) This, Plaintiff alleges, amounts to a violation of the Equal Protection Clause.

The Court addresses the FID and Cascade Area separately, starting with the FID. The trouble with Plaintiff's argument is that Plaintiff cites no authority for the proposition that the Equal Protection Clause is violated where those outside the proposed city limits are allowed to vote on a referendum incorporating a new city. For that reason, the Court cannot hold that Plaintiff has a substantial likelihood of success on the merits. In fact, the cases reviewed by the Court, though factually distinguishable, at least arguably provide support for Defendants' position. See Holt Civic Club v. City of Tuscaloosa, 439 U.S. 60 (1978) (finding no equal protection violation in Alabama's police jurisdiction statute, which allowed extraterritorial jurisdiction); Town of Lockport, N.Y. v. Citizens for Comm. Action At The Local Level, Inc., 430 U.S. 259 (1977) (finding no equal protection violation where the county charter had to be approved by majorities of both individuals living within city limits and individuals in unincorporated areas).

As it pertains to the Cascade Area, the Court is even less convinced. Plaintiff's argument proceeds as follows. The Georgia Supreme Court will, at some unknown date, issue its ruling on the appeal. In the meantime, however, Cascade area residents are permitted to vote in the Referendum. If, however, the Georgia Supreme Court reverses the Superior Court's decision, the Cascade Area

Annexations will be declared valid, and the Cascade area will be part of the City of Atlanta. Thus, Plaintiff argues that residents who may not ultimately reside in the City of South Fulton are being permitted to vote on the Referendum.

As of now, however, residents in the Cascade Area are residents of unincorporated Fulton County, which would be included in the proposed City of South Fulton. Because the law as it stands now allows them to vote, the Court can find no equal protection issue at this time. In essence, Plaintiff asks this Court to issue a ruling based on a set of facts not yet before it, and in so doing requests an advisory opinion, which this Court cannot give.

ii.   <u>Substantive Due Process</u>

Plaintiff next argues that "neither the ballot language nor the full text of House Bill 514 informs voters of the lawsuits and their potential impact on the proposed city's boundaries and tax base." (Doc. No. 2 at 3.) Stated differently, Plaintiff argues that the ballot language is both indefinite and ambiguous, such that it does not adequately inform voters about the topic on which they are voting in violation of substantive due process. (<u>Id.</u> at 16.)

The ballot language is as follows: "Shall the Act incorporating the City of South Fulton in Fulton County and granting the homestead exemptions described therein be approved?" (<u>Id.</u> at 17.) As the Eleventh Circuit Court of Appeals explained when denying a request to invalidate a state election,

7

> [I]t must be demonstrated that the state's choice of ballot language so upset the evenhandedness of the referendum that it worked a "patent and fundamental unfairness" on the voters. Such an exceptional case can arise . . . only when the ballot language is so misleading that voters cannot recognize the subject of the amendment at issue. In such a case, the voters would be deceived, in a concrete and fundamental way, about "what they are voting for or against."

Burden v. State of Ga., 953 F.2d 1266, 1269 (11th Cir. 1992) (citations omitted). On careful consideration and in light of the extremely high standard required by the Eleventh Circuit, the Court finds that Plaintiff has failed to meet his burden. Stated differently, the Court does not find Plaintiff has a substantial likelihood of success of proving that "the ballot language is so misleading that voters cannot recognize the subject of the [Referendum] at issue." Id.

C.   *Irreparable Harm*

Plaintiff makes two arguments regarding how he will be irreparably harmed if the vote on the Referendum is not halted. First, relying on Harris v. Graddick, 593 F. Supp. 128 (M.D. Ala. 1984), he argues that irreparable harm is presumed. In Harris, however, the plaintiffs sought preliminary injunctive relief pursuant to Section 2 of the Voting Rights Act of 1965. 593 F. Supp. at 135. The Harris court explained that when Section 2 is violated, and impediments to the right to vote exist, the public at large suffers the irreparable injury. 593 F. Supp. at 135. This case does not involve Section 2 of the Voting Rights Act. Instead, Plaintiff alleges

equal protection and due process violations. Accordingly, the Court finds that Plaintiff must demonstrate irreparable harm and it is not presumed by law.

Plaintiff next contends that because his vote will be diluted and not carry as much weight as it should if the Referendum goes forward, he cannot be compensated monetarily and therefore will suffer irreparable harm. "The key word in [the Court's] consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or *other corrective relief* will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Sampson v. Murray, 415 U.S. 61, 90 (1974) (emphasis added). Here, the Court finds that other corrective relief is available should Plaintiff ultimately succeed. For example, the Court could, after considering the merits of the case, invalidate the results of the Referendum.

Plaintiff suggests that more practical options would be to (1) post signage at the few applicable polling locations indicating that the Referendum will not be taking place and (2) refrain from canvassing and certifying the results of the Referendum. The Court finds these impractical for a number of reasons. As indicated during oral argument, during the early voting period residents of Fulton County can vote at any Fulton County polling place and are not limited to the geographically assigned polling location. Further, as of October 22, 2016, the

Fulton County Department of Registration and Elections has received 8,309 completed absentee ballots. (Doc. No. 17 at ¶ 11.) At least 83,616 voters have participated in early voting. (Id. at ¶ 14.) Accordingly, at least 90,000 votes have already been received. Although Plaintiff suggested at oral argument that halting the Referendum is preferable to invalidating its results, after a thorough review of the merits, the Court disagrees, especially considering the election has already been underway for a number of weeks.

### III.   Conclusion

For the reasons stated herein and those already provided to the parties at oral argument, the Court **DENIES** Plaintiff's Motion for Temporary Restraining Order. (Doc. No. 2.) The Court also **GRANTS** the Motion for Leave to File Brief Amicus Curiae. (Doc. No. 21.)

**SO ORDERED**, this 2nd day of November, 2016.

_Eleanor L. Ross_
Eleanor L. Ross
United States District Judge
Northern District of Georgia